234 F.3d 682 (Fed. Cir. 2000)
 DISABLED AMERICAN VETERANS,
and
NATIONAL ORGANIZATION OF VETERANS' ADVOCATES, INC.,
and
PARALYZED VETERANS OF AMERICA,
and
VIETNAM VETERANS OF AMERICA, INC., Petitioners,
v.
Hershel W. Gober, ACTING SECRETARY OF VETERANS AFFAIRS, Respondent.
 99-7061,-7071,-7084,-7085
 United States Court of Appeals for the Federal Circuit
 DECIDED: December 8, 2000
Rehearing Denied: January 2, 2001.
 
 Appealed from: Department of Veterans Affairs[Copyrighted Material Omitted][Copyrighted Material Omitted]
 Stephen L. Purcell, Disabled American Veterans, of Washington, DC, argued for petitioner, Disabled Veterans of America. With him on the brief was Ronald L. Smith
 Michael P. Horan, Paralyzed Veterans of America, of Washington, DC, argued for petitioner, Paralyzed Veterans of America.
 Michael E. Wildhaber, The Law Office of Wildhaber & Associates, of Washington, DC, argued for petitioner, Vietnam Veterans of America, Inc.
 Kenneth M. Carpenter, National Organization of Veterans' Advocates, Inc., of Topeka, Kansas, argued for petitioner, National Organization of Veterans' Advocates, Inc.
 Matthew P. Reed, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. On the brief wereDavid W. Ogden, Assistant Attorney General; David M. Cohen, Director; Kathryn A. Bleecker, Assistant Director; and Tara A. Hurley, Attorney. Of counsel on the brief wereDonald E. Zeglin, Deputy Assistant General Counsel; and Michael J. Timinski, Attorney, Department of Veterans Affairs, of Washington, DC.
 Before MAYER, Chief Judge, MICHEL, and SCHALL, Circuit Judges.
 SCHALL, Circuit Judge.
 
 
 1
 Disabled American Veterans ("DAV"), National Organization of Veterans' Advocates, Inc. ("NOVA"), Paralyzed Veterans of America ("PVA"), and Vietnam Veterans of America, Inc. ("VVA") (collectively "Petitioners") challenge the validity of certain regulations promulgated by the Department of Veterans Affairs ("VA") and codified at 38 C.F.R. §§ 20.1400-20.1411.[1] The regulations at issue constitute the rules of practice for seeking revision of a decision of the Board of Veterans' Appeals ("Board") on the ground of clear and unmistakable error ("CUE") under 38 U.S.C. § 7111. Petitioners challenge the rules as having been issued without compliance with the rulemaking procedures required by 5 U.S.C. § 553. They also challenge the rules as arbitrary and capricious and as contrary to various statutory provisions, including parts of § 7111. Petitioners bring their challenge under 38 U.S.C. § 502.
 
 
 2
 We hold that the rule codified at 38 C.F.R. § 20.1404(b) is invalid because, in conjunction with the rule codified at 38 C.F.R. § 20.1409(c), it operates to prevent Board review of any CUE claim that is the subject of a motion that is denied for failure to comply with the filing and pleading requirements of the rule codified at 38 C.F.R. § 20.1404(b). That is contrary to the requirement of 38 U.S.C. § 7111(e) that a CUE claim "shall be decided by the Board on the merits." However, we hold that the other rules challenged by Petitioners are valid because they were issued in compliance with applicable rulemaking procedures and are not arbitrary, capricious, or contrary to law.
 
 BACKGROUND
 I.
 
 3
 A final decision of a VA regional office ("RO") is subject to collateral attack by a claim of CUE. See Bustos v. West, 179 F.3d 1378, 1380 (Fed. Cir. 1999). A claim of CUE has been governed by regulation since 1928. See Smith v. Brown, 35 F.3d 1516, 1524-25 (Fed. Cir. 1994) (providing a history of the evolution of regulations describing CUE review). The regulation currently codified at 38 C.F.R. § 3.105(a) provides, in pertinent part, that "[p]revious determinations which are final and binding . . . will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed and amended." In Smith, we held that CUE review under section 3.105(a) applies to review of RO decisions and not decisions of the Board. Smith, 35 F.3d at 1526-27.
 
 
 4
 In 1997, Congress enacted Pub. L. No. 105-111, 111 Stat. 2271 (1997) (codified at 38 U.S.C. §§ 5109A, 7111), entitled "An Act To amend title 38, United States Code, to allow revision of veterans benefits decisions based on clear and unmistakable error" (the "Act"). The Act has two sections: Section 1(a), codified at 38 U.S.C. § 5109A, which relates to CUE review of RO decisions; and Section 1(b), codified at 38 U.S.C. § 7111, which relates to CUE review of Board decisions. See 111 Stat. at 2271-72.
 
 
 5
 Section 5109A is a codification of 38 C.F.R. § 3.105(a). It allows RO decisions to be subject to CUE review. See Donovan v. West, 158 F.3d 1377, 1383 (Fed. Cir. 1998) (noting that "[a]lthough more detailed than [38 C.F.R. § 3.105(a)], the basic substantive provision in [38 U.S.C. § 5109A] is the same as that in the regulation"); see also H.R. Rep. No. 105-52, at 2-3 (1997) (noting that the bill, H.R. 1090, which became Pub. L. No. 105-111, would codify 38 C.F.R. § 3.105(a)); S. Rep. No. 105-157, at 4 (1997) (stating that a purpose of the bill was to "codify, in statute, the [CUE challenge] currently specified by regulation").
 
 
 6
 Section 1(b) of the Act (codified at 38 U.S.C. § 7111) was enacted in response to our holding in Smith. Section 7111 allows Board decisions to be subject to CUE review. See Donovan, 158 F.3d at 1383; see also H.R. Rep. No. 105-52, at 2. It represents an "exten[sion] [of] the principle underlying [38 C.F.R. § 3.105(a)] to [Board] decisions." H.R. Rep. No. 105-52, at 2. In addition, when passing the Act, Congress looked to the decisions of the United States Court of Appeals for Veterans Claims that have defined CUE. See H.R. Rep. No. 105-52, at 2-3; S. Rep. No. 105-157, at 3 (both citing Russell v. Principi, 3 Vet. App. 310, 313 (1992) (en banc), and Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993)); Bustos, 179 F.3d at 1380-81 (noting that the legislative history of the Act "cites favorably to the Court of Appeals for Veterans Claims' interpretation of the CUE standard"). The Act "codified . . . the Court of Appeals for Veterans Claims' long standing interpretation of CUE." Bustos, 179 F.3d at 1381.
 
 
 7
 Section 7111, which is the basis for the rules in this case, provides as follows:
 
 
 8
 (a) A decision by the Board is subject to revision on the grounds of clear and unmistakable error. If evidence establishes the error, the prior decision shall be reversed or revised.
 
 
 9
 (b) For the purposes of authorizing benefits, a rating or other adjudicative decision of the Board that constitutes a reversal or revision of a prior decision of the Board on the grounds of clear and unmistakable error has the same effect as if the decision had been made on the date of the prior decision.
 
 
 10
 (c) Review to determine whether clear and unmistakable error exists in a case may be instituted by the Board on the Board's own motion or upon request of the claimant.
 
 
 11
 (d) A request for revision of a decision of the Board based on clear and unmistakable error may be made at any time after that decision is made.
 
 
 12
 (e) Such a request shall be submitted directly to the Board and shall be decided by the Board on the merits, without referral to any adjudicative or hearing official acting on behalf of the Secretary.
 
 
 13
 (f) A claim filed with the Secretary that requests reversal or revision of a previous Board decision due to clear and unmistakable error shall be considered to be a request to the Board under this section, and the Secretary shall promptly transmit any such request to the Board for its consideration under this section.
 
 
 14
 38 U.S.C. § 7111.
 
 II.
 
 15
 On May 19, 1998, the VA published a notice of proposed rulemaking to implement 38 U.S.C. § 7111 and invited comments on the proposed rules. 63 Fed. Reg. 27534-541 (May 19, 1998). Comments were received from DAV, NOVA, PVA, and VVA, as well as from other members of the public. On January 13, 1999, the VA published the proposed final rules. 64 Fed. Reg. 2134-41 (Jan. 13, 1999). The rules had an effective date of February 12, 1999, id. at 2134, and were codified in a new subpart O of part 20 of title 38 of the Code of Federal Regulations. Id. at 2139. The new subpart O sets forth Rules 1400 to 1411, codified at 38 C.F.R. §§ 20.1400-20.1411. Id. at 2139-41.
 
 
 16
 On February 12, 1999, the VA issued an "interim final rule," amending 38 C.F.R. § 20.1405(a). 64 Fed. Reg. 7090-91. Rule 1405(a) was amended to require the VA to notify a claimant's representative, attorney, agency, or organization whenever the claimant files a CUE claim "to encourage representatives' participation in CUE motions." Id. at 7091. This "interim final rule" became effective on February 12, 1999, and comments regarding the rule were required to be submitted by March 15, 1999. Id. at 7090. The rules, with this modification, became effective on February 12, 1999.[2]
 
 
 17
 DAV filed a petition for review with this court on March 1, 1999, challenging the validity of the rules codified at 38 C.F.R. §§ 20.1400(b), 20.1404(b), and 20.1405(f). NOVA filed a petition for review on March 18, 1999, challenging the validity of the rules codified at 38 C.F.R. §§ 20.1401(a), 20.1403(a),(b)(2),(c)-(e), and 20.1406(b). PVA filed a petition for review on April 14, 1999, challenging the validity of the VA's rulemaking procedure, and specifically challenging the validity of the rules codified at 38 C.F.R. §§ 20.1401(a), 20.1403(a)-(e), 20.1404(a)-(b), 20.1405(b)-(c),(e)-(f), 20.1406(a)-(b), 20.1407, 20.1409(c),(d), and 20.1411(a)-(d). VVA filed a petition for review on April 14, 1999, challenging the validity of the rules codified at 38 C.F.R. §§ 20.1402, 20.1405(e)-(f), and 20.1411(b)-(d). All four petitioners seek review of the challenged rules pursuant to 38 U.S.C. § 502.[3]
 
 
 18
 After DAV and NOVA filed their petitions, the VA filed a motion to dismiss NOVA's petition as untimely in light of Fed. Cir. R. 47.12(a) (Mar. 4, 1999). The motion was denied; however, the order denying the motion stated that the VA could present the timeliness argument in its brief. Disabled Am. Veterans v. West, Nos. 99-7061, -7071 (Fed. Cir. May 4, 1999) (order). In the same order, we sua sponte consolidated the petitions of DAV and NOVA. Id. Then, on May 6, 1999, we granted PVA's and VVA's motions to consolidate DAV's and NOVA's petitions with those of PVA and VVA. Disabled Am. Veterans v. West, Nos. 99-7061, -7071, -7084, -7085 (Fed. Cir. May 6, 1999) (order). Thereafter, the VA sought reconsideration of its motion to dismiss NOVA's petition as untimely, and also moved to dismiss PVA's and VVA's petitions as untimely. These motions were denied, the order noting that the VA could raise its timeliness argument in its brief. Disabled Am. Veterans v. West, Nos. 99-7061, -7071, -7084, -7085 (Fed. Cir. July 8, 1999) (order).
 
 III.
 
 19
 We have jurisdiction to directly review the validity of both the rulemaking process and the challenged rules of the VA pursuant to 38 U.S.C. § 502, which states:
 
 
 20
 An action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers . . . is subject to judicial review. Such review shall be in accordance with chapter 7 of title 5 and may be sought only in the United States Court of Appeals for the Federal Circuit. . . .
 
 
 21
 The VA is required under 5 U.S.C. § 552(a)(1) to "state and currently publish in the Federal Register," among other things, "rules of procedure, . . . substantive rules of general applicability adopted as authorized by law, . . . [and] each amendment, revision, or repeal of the foregoing." 5 U.S.C. § 552(a)(1)(C)-(E); see also Paralyzed Veterans of Am. v. West, 138 F.3d 1434, 1435 (Fed. Cir. 1998); Lefevre v. Sec'y, 66 F.3d 1191, 1196 (Fed. Cir. 1995). The procedure required for rulemaking is specified under 5 U.S.C. § 553. See Mortgage Investors Corp. of Ohio v. Gober, 220 F.3d 1375, 1378 (Fed. Cir. 2000); Lefevre, 66 F.3d at 1196. Thus, under 38 U.S.C. § 502, we may review the VA's procedural and substantive rules, any amendments to those rules, and the process in which those rules are made or amended. See Mortgage Investors, 220 F.3d at 1377-78; Splane v. West, 216 F.3d 1058, 1062 (Fed. Cir. 2000); Lefevre, 66 F.3d at 1196.
 
 DISCUSSION
 I. NOVA's Standing
 
 22
 The VA argues that NOVA's petition for review should be dismissed due to a lack of standing. In order to satisfy the case or controversy requirement of Article III, a plaintiff must have standing--the plaintiff must "allege[] [some] personal stake in the outcome of the controversy." Baker v. Carr, 369 U.S. 186, 204 (1962). For an association to have standing, the association must show that either "it has suffered harm, or that one or more of its members are injured." Warth v. Seldin, 422 U.S. 490, 515 (1975). To establish standing based upon harm to one or more of its members (associational standing), an association must establish "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977). The VA asserts that NOVA does not meet the first and second requirements for associational standing. It argues that since NOVA is an organization for veterans' attorneys and non-attorney representatives, not veterans, NOVA cannot assert associational standing. The VA also argues that NOVA's purpose is not to represent its members' interests as veterans, but to represent its members' interests as veterans' advocates.
 
 
 23
 Contrary to the VA's arguments, NOVA has established the associational standing requirements. The first prong is met because, as the VA agreed at oral argument, NOVA includes at least one veteran as a member. See United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 555 (1996) (noting that the first element of the associational standing test "require[s] an organization suing" to have "at least one member with standing to present, in his or her own right, the claim"). NOVA's members who are veterans, regardless of their status as veterans' advocates, are personally affected by the CUE rules for the same reason that members of the DAV, PVA, and VVA are personally affected by the rules. NOVA's veterans have valid concerns about the effect of the rules on their ability to challenge a Board decision on the basis of CUE. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, ---, 120 S.Ct. 693, 705-06 (2000) (finding that the Friends of the Earth organization contained members who had "reasonable concerns" about the effect of Laidlaw's pollution on their "recreational, aesthetic, and economic interests," and thus met the first prong of the associational standing test).
 
 
 24
 NOVA meets the second prong of the associational standing test because the protection of a veteran's ability to assert a CUE claim in light of the rules at issue is "germane" to a purpose of NOVA. NOVA's by-laws describe its purpose as "representation for all persons seeking benefits through the federal veteran's benefits system, and in particular those seeking judicial review of denials of veterans' benefits." NOVA Pet. Rev. at 24. NOVA is attempting to protect an interest related to its organization's purpose in this case by trying to protect the rights of veterans, including those veterans who are among its members, in connection with CUE challenges to Board decisions. See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock, 477 U.S. 274, 286-87 (1986) (finding that an organization's purpose to establish legislation to implement "real social and unemployment insurance" was germane to a claim seeking enforcement of such legislation). As long as the subject of NOVA's claim is relevant to its purpose, NOVA "will [itself] have a stake in the resolution of the dispute, and thus be in a position to serve as [the VA's] natural adversary." United Food & Commercial Workers Union, 517 U.S. at 555. We conclude that NOVA's challenge to the CUE rules is relevant to its purpose of aiding veterans in obtaining benefits. Consequently, we hold that NOVA has standing.
 
 II. Timeliness
 
 25
 An action for judicial review of a rule or regulation under 38 U.S.C. § 502 must be filed, under the rules of this court, "with the clerk within 60 days after issuance of the rule or regulation" at issue. Fed. Cir. R. 47.12(a). As noted, on January 13, 1999, the VA published the final rules to be codified at 38 C.F.R. §§ 20.1400-20.1411, and the rules became effective on February 12, 1999. DAV filed its petition for review on March 1, 1999, 47 days after the rules' final publication, and 17 days after their effective date. NOVA filed its petition for review on March 23, 1999, 69 days after publication, and 39 days after the effective date. VVA and PVA filed their petitions for review on April 12, 1999, 89 days after publication, and 59 days after the effective date. The VA contends that "issuance" under Fed. Cir. R. 47.12(a) means the date a rule is published and that, as a result, NOVA, PVA, and VVA filed their petitions more than 60 days after the issuance (publication) date of the challenged rules. Petitioners respond that Fed. Cir. R. 47.12(b) only allows those harmed by a contested rule to petition under 38 U.S.C. § 502 and that a party is not harmed until a rule becomes effective. Petitioners therefore reason that if "issuance" in Fed. Cir. R. 47.12(a) means the date a rule is published, when a rule is published more than 60 days before it becomes effective, a petitioner will not be able to present a timely challenge to the rules. Thus, Petitioners contend that, as a practical matter, "issuance" must be read to mean the effective date of a contested rule in order for a petitioner to satisfy the criteria of Fed. Cir. R. 47.12(b).[4]
 
 
 26
 We agree with Petitioners. In order to ensure that the harm requirement of Fed. Cir. R. 47.12(b) is met, "issuance" must be defined as the date a rule becomes effective. Fed. Cir. R. 47.12(b) only allows a "person adversely affected or aggrieved by the rule or regulation . . . [to] bring an action for judicial review." A petitioner cannot be affected by a rule or regulation until, at the very least, that rule or regulation has gone into effect. Mere publication of a rule does not mean that the rule will actually go into effect. In addition, a rule may be modified before it becomes effective, which occurred here in the case of the rule codified at 38 C.F.R. § 20.1405(a). See 64 Fed. Reg. at 7090-91. Thus, defining "issuance" as the date of effectiveness makes Fed. Cir. R. 47.12 internally consistent, allowing a petitioner to meet both the timeliness and harm requirements when challenging a rule promulgated by the VA.
 
 
 27
 Furthermore, defining "issuance" as the date a rule becomes effective allows a controversy to become ripe. A controversy must be "ripe" for judicial resolution in order "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Garner, 387 U.S. 136, 148-49 (1967); see also Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57-59 (1993). If a petitioner must file within 60 days of publication, the agency's rule or decision may have yet to be formalized, making court review both premature and speculative. Although not all petitions filed within 60 days of a rule's effectiveness date are, by definition, ripe, defining "issuance" as the date of effectiveness, as opposed to the date of publication, ensures that most petitions under 38 U.S.C. § 502 can satisfy Article III concerns.
 
 III. Standard of Review
 
 28
 Petitions under 38 U.S.C. § 502 are reviewed "in accordance with chapter 7 of title 5," i.e., under the Administrative Procedure Act ("APA") standard of review, seeMortgage Investors, 220 F.3d at 1377-78; Splane, 216 F.3d at 1067; Jackson v. Brown, 55 F.3d 589, 591 (Fed. Cir. 1995); Hilario v. Sec'y, Dep't of Veterans Affairs, 937 F.2d 586, 588 (Fed. Cir. 1991). The APA standard of review requires the reviewing court to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The court must then decide whether the agency's action or rule is:
 
 
 29
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 
 
 30
 (B) contrary to constitutional right, power, privilege, or immunity;
 
 
 31
 (C) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right; [or]
 
 
 32
 (D) without observance of procedure required by law . . . .
 
 
 33
 5 U.S.C. § 706(2)(A)-(D). This review is "highly deferential" to the actions of the agency. See Lefevre, 66 F.3d at 1199 (quoting Ethyl Corp. v. Envtl. Protection Agency, 541 F.2d 1, 34 (D.C. Cir. 1976)).
 
 
 34
 The first inquiry under 5 U.S.C. § 706, in which we interpret the meaning of relevant statutes, is governed by the standards established by the Supreme Court inChevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). InChevron, the Court stated:
 
 
 35
 First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 36
 Id. (footnotes omitted). "An agency that has been granted authority to promulgate regulations necessary to the administration of a program it oversees may fill gaps in the statutory scheme left by Congress."[5] Contreras v. United States, 215 F.3d 1267, 1274 (Fed. Cir. 2000). An agency may also resolve ambiguities with respect to an issue of interpretation left by Congress as long as the agency's action is reasonable and consistent in light of the statute and congressional intent. See Gilpin, 155 F.3d at 1355-56. Thus, Chevron deference applies if Congress is either silent or unclear on a particular issue. However, modifying the traditional Chevron analysis is the doctrine governing the interpretation of ambiguities in veterans' benefit statutes--that "interpretative doubt is to be resolved in the veteran's favor," Brown v. Gardner, 513 U.S. 115, 118 (1994). Yet, "[a]t the same time, we have also recognized that a veteran 'cannot rely upon the generous spirit that suffuses the law generally to override the clear meaning of a particular provision.'" Boyer v. West, 210 F.3d 1351, 1355 (Fed. Cir. 2000) (quoting Smith, 35 F.3d at 1526).
 
 IV. Rulemaking Process
 
 37
 After notice and comment on a proposed rule, an agency is required to "incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. § 553. "The purpose of requiring a statement of the basis and purpose is to enable courts, which have the duty to exercise review, to be aware of the legal and factual framework underlying the agency's actions." Am. Standard, Inc. v. United States, 602 F.2d 256, 269 (Ct. Cl. 1979) (citing Sec. Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 94 (1943)). If the basis and purpose of the statute is inherent in the rule and enabling statute, no separate statement of basis and purpose is required. Seeid. In addition, inextricably intertwined with the basis and purpose requirement of 5 U.S.C. § 553(c) is the agency's need to respond, in a reasoned manner, to any comments received by the agency that raise significant issues with respect to a proposed rule. See Action on Smoking & Health v. C.A.B., 699 F.2d 1209, 1216 (D.C. Cir. 1983); see also Mortgage Investors, 220 F.3d at 1379. However, the agency need not respond to each comment, and the detail of the agency's response depends upon the subject matter of the regulation and the comments received. See Reytblatt v. United States Nuclear Regulatory Comm'n, 105 F.3d 715, 722 (D.C. Cir. 1997).
 
 
 38
 PVA argues that, in this case, the VA failed to provide an adequate statement of the basis for the rules at issue and their purpose. PVA also argues that the VA either did not respond, or responded inadequately, to the comprehensive comments and recommendations that PVA submitted during the rulemaking process.
 
 
 39
 We reject PVA's arguments. We believe that the VA provided a proper statement of the CUE rules' basis and purpose. First, in the published rules, the VA stated that the purpose of the rules was to "provide specific application procedures and establish decision standards based on case law." 64 Fed. Reg. at 2134. The VA also stated that the proposed rules were drafted based on legislative history and congressional intent with respect to 38 U.S.C. § 7111. Further, the VA indicated that it did not view the statute as having altered the standards, established by regulation and Court of Appeals for Veterans Claims decisions, governing CUE claims. See id. at 2135. In addition to these general comments, in the case of each proposed rule, before stating the rule, the VA provided an explanation of the rule, reiterating its answers to significant comments that it had received. See id. at 2135-37. In our view, the VA made clear the legal and factual framework underlying the new rules, as well as the rules' purpose, thereby making the rules readily reviewable by this court. In short, we see no abuse of discretion, or arbitrary or capricious action by the VA during the rulemaking process in responding to comments from the public. We therefore hold that the VA met the requirements of 5 U.S.C. § 553. We turn now to the Petitioners' various challenges to the CUE rules.
 
 V. Validity of the Challenged Rules
 
 40
 A. Rule 1400. Motions to revise Board decisions.
 
 
 41
 Rule 20.1400(b) states:(b) All final Board decisions are subject to revision under this subpart except:
 
 
 42
 (1) Decisions on issues which have been appealed to and decided by a court of competent jurisdiction; and
 
 
 43
 (2) Decisions on issues which have subsequently been decided by a court of competent jurisdiction.
 
 
 44
 38 C.F.R. § 20.1400(b). This rule prevents the Board from reviewing a previous Board decision on an issue for CUE when the previous issue has been appealed to, or decided by, a court of competent jurisdiction, such as the Court of Appeals for Veterans Claims, and that reviewing court has decided the issue the claimant seeks to review for CUE. See 64 Fed. Reg. at 2135-36 (explaining the basis and purpose of Rule 1400(b)).
 
 
 45
 DAV argues that Rule 1400(b) is contrary to 38 U.S.C. § 7111 because § 7111 does not limit the types of Board decisions that are subject to CUE review. The VA responds that Rule 1400(b) avoids the anomalous situation of an inferior tribunal collaterally reviewing the action of a superior court, i.e., the Board reviewing a decision of the Court of Appeals for Veterans Claims on a particular issue. The VA contends that § 7111 is silent as to which Board decisions are reviewable, and Congress' intent in enacting § 7111 was to codify existing Court of Appeals for Veterans Claims and Federal Circuit case law that a lower tribunal cannot review the decision of a superior court.
 
 
 46
 We do not find Rule 1400(b) contrary to 38 U.S.C. § 7111; nor is it arbitrary or capricious. In Smith, we held that 38 C.F.R. § 3.105(a) does not permit a collateral challenge to a RO decision after the Board has sustained it. Smith, 35 F.3d at 1526. InDonovan, 158 F.3d at 1382-83, we held that because 38 U.S.C. § 5109A is a codification of 38 C.F.R. § 3.105(a), the prohibition against collateral review that we found under the regulation in Smith extends to § 5109A. See also Dittrich v. West, 163 F.3d 1349, 1352 (Fed. Cir. 1998). "The rationale for [this] rule is that it is improper for a lower tribunal (the RO) to review the decision of a higher tribunal (the Board of Veterans' Appeals)." Brown v. West, 203 F.3d 1378, 1381 (Fed. Cir. 2000).
 
 
 47
 We see no reason why this logic, which we found to apply to 38 C.F.R. § 3.105(a) and 38 U.S.C. § 5109A, does not apply to 38 U.S.C. § 7111. As noted above, Congress intended to extend the principles underlying 38 C.F.R. § 3.105(a) to § 7111, which governs CUE review of Board decisions. The rationale that a lower tribunal cannot review the decision of a higher tribunal applies to § 7111--the Board cannot review a decision of the Court of Appeals for Veterans Claims. Moreover, although 38 U.S.C. § 7111(a) provides for "[a] decision by the Board [to be] subject to revision on the grounds of [CUE]," if a superior court, such as the Court of Appeals for Veterans Claims, affirms the determination of the Board on a particular issue, that Board decision is replaced by the Court of Appeals for Veterans Claims decision on that issue. Thus, there is no longer any "decision by the Board that [can be] subject to revision."
 
 
 48
 B. Rule 1401. Definitions.
 
 Rule 1401(a) states:
 
 49
 Issue. Unless otherwise specified, the term "issue" in this subpart means a matter upon which the Board made a final decision (other than a decision under this subpart). As used in the preceding sentence, a "final decision" is one which was appealable under Chapter 72 of title 38, United States Code, or which would have been so appealable if such provision had been in effect at the time of the decision.
 
 
 50
 38 C.F.R. § 20.1401(a). This definition of "issue" controls what subject matter a claimant can request be reviewed for CUE. See 64 Fed. Reg. at 2136 (stating that, under this rule, "only final outcome-determinative decisions of the Board are subject to revision on the grounds of CUE").
 
 
 51
 NOVA argues that the definition of "issue" under Rule 1401(a) is calculated to limit and restrict the number of errors a claimant can challenge, thereby making the rule inconsistent with the pro-veteran nature of the veterans' benefits scheme. NOVA contends that the language of 38 U.S.C. § 7111 mandates the allowance of challenges to any prior Board decision and that the statute is not broadly and liberally construed by narrowing the "issues" which a veteran may assert. PVA adds that the regulation is vague, failing to adequately explain the meaning of the term "issue." The VA responds that the rule does not limit the issues that can be raised for CUE review; it simply defines which "issue[s]" a claimant can challenge. The VA states that the definition recognizes that a single Board decision may involve multiple issues, and that the definition allows "a claimant who has already obtained a [B]oard decision on a CUE motion challenging the decision on one issue to still bring a CUE motion with respect to the [B]oard's decision on another issue." Respondent's Br. at 44.
 
 
 52
 Rule 1401(a)'s definition of "issue" is consistent with 38 U.S.C. § 7111, and it is not arbitrary or capricious. Although § 7111 indicates that "[a] decision by the Board is subject to revision," what constitutes the "decision" that is reviewed for CUE is ambiguous. Rule 1401(a) is a reasonable exercise of the VA's rulemaking ability, underChevron, to resolve this ambiguity. In addition, as the VA indicates, allowing a claimant to seek CUE review of a specific issue in a Board decision leaves other issues in that decision subject to their own CUE review. We believe that Rule 1401(a) provides claimants with greater freedom in pursuing CUE claims, and it provides this freedom through its clear definition of the term "issue." By defining "issue" as a "matter" on which the Board made a final decision, the rule makes it possible for a claimant to bring a separate CUE claim with respect to each distinct claim addressed in a Board decision. Thus, the VA resolved the ambiguity in 38 U.S.C. § 7111 in favor of the veteran.
 
 
 53
 C. Rule 1402. Inapplicability of other rules.
 
 Rule 1402 states:
 
 54
 Motions filed under this subpart are not appeals and, except as otherwise provided, are not subject to the provisions of part 19 of this title or this part 20 which relate to the processing and disposition of appeals.
 
 
 55
 38 C.F.R. § 20.1402.
 
 
 56
 VVA argues that this rule, by preventing CUE claims from being subject to the normal procedures governing appeals to the Board, excludes claimants from necessary due process protections. VVA also asserts that the legislative history of 38 U.S.C. § 7111 suggests that a CUE claim is either a claim or an appeal of a claim. The VA counters that it is clear from chapter 71 of title 38 of the United States Code that a motion for CUE revision is not an ordinary appeal and that consequently, there is no need, for example, for a notice of disagreement or statement of the case, as required by part 19 and part 20 of title 38 of the Code of Federal Regulations.
 
 
 57
 Section 7111 does not address the specific procedures that govern a CUE claim. At the same time, the statute does not state whether a request for CUE review is an "appeal" of a Board decision. Although members of Congress referred to 38 U.S.C. § 7111 as allowing "appeals based on what is known as [CUE]," 137 Cong. Rec. at H1567 (daily ed. Apr. 16, 1997) (statement of Rep. Stump) (emphasis added), such statements do not mean that Congress wanted CUE claims to be governed by the current regulations that govern Board appeals. Furthermore, this court has noted that CUE claims are not conventional "appeals," but rather are requests for revisions of previous decision. See Haines v. West, 154 F.3d 1298, 1300 (Fed. Cir. 1998) (discussing CUE claims under 38 U.S.C. § 5109A). Rule 1402 is a reasonable way of filling the gap left by 38 U.S.C. § 7111 on how, procedurally, claims for CUE review of Board decisions should be handled. Furthermore, we note that subpart O affords due process safeguards by providing the claimant with access to a hearing under certain circumstances, see 38 C.F.R. § 20.1405(c), and by facilitating the Board's ability to make sure the record relating to a CUE claim is complete, see 38 C.F.R. § 20.1405(e).
 
 
 58
 D. Rule 1403. What constitutes clear and unmistakable error; what does not.
 
 Rule 1403 states:
 
 59
 (a) General. Clear and unmistakable error is a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Generally, either the correct facts, as they were known at the time, were not before the Board, or the statutory and regulatory provisions extant at the time were incorrectly applied.
 
 
 60
 (b) Record to be reviewed.--
 
 
 61
 (1) General. Review for clear and unmistakable error in a prior Board decision must be based on the record and the law that existed when that decision was made.
 
 
 62
 (2) Special rule for Board decisions issued on or after July 21, 1992. For a Board decision issued on or after July 21, 1992, the record that existed when that decision was made includes relevant documents possessed by the Department of Veterans Affairs not later than 90 days before such record was transferred to the Board for review in reaching that decision, provided that the documents could reasonably be expected to be part of the record.
 
 
 63
 (c) Errors that constitute clear and unmistakable error. To warrant revision of a Board decision on the grounds of clear and unmistakable error, there must have been an error in the Board's adjudication of the appeal which, had it not been made, would have manifestly changed the outcome when it was made. If it is not absolutely clear that a different result would have ensued, the error complained of cannot be clear and unmistakable.
 
 
 64
 (d) Examples of situations that are not clear and unmistakable error. --
 
 
 65
 (1) Changed diagnosis. A new medical diagnosis that "corrects" an earlier diagnosis considered in a Board decision.
 
 
 66
 (2) Duty to assist. The Secretary's failure to fulfill the duty to assist.
 
 
 67
 (3) Evaluation of evidence. A disagreement as to how the facts were weighed or evaluated.
 
 
 68
 (e) Change in interpretation. Clear and unmistakable error does not include the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a change in the interpretation of the statute or regulation.
 
 
 69
 38 C.F.R. § 20.1403. Rule 1403(a) defines CUE using a "but for" test--but for the CUE, the result of a Board decision on an issue would have been different. 38 C.F.R. § 20.1403(a). Rule 1403(b)(1) indicates that the record to be reviewed when deciding a CUE claim is the record that was before the Board in the prior Board decision. See 38 C.F.R. § 20.1403(b)(1). Rule 1403(b)(2) adopts the concept of "constructive notice" for Board decisions after July 21, 1992, allowing the record to be reviewed to consist of both the record in the prior Board decision and evidence that could "reasonably be expected to be part of the record" in the prior Board decision.[6]
 
 
 70
 38 C.F.R. § 20.1403(b)(2). Rule 1403(c) reiterates the CUE standard, noting that if it is not clear whether the "but for" standard is met, there is no CUE. 38 C.F.R. § 20.1403(c). Rule 1403(d) indicates specific errors which are not CUE, such as a failure to fulfill the duty to assist. See 38 C.F.R. § 20.1403(d). Finally, Rule 1403(e) states that a change in the interpretation of a law cannot create CUE when the prior Board decision includes a correct application of the law as it was at the time of the prior decision. See 38 C.F.R. § 20.1403(e).
 
 
 71
 PVA asserts that Rule 1403, in general, is unfair and ensures that no claimant will ever prevail on a CUE claim. NOVA argues that Rule 1403(a)'s "but for" test, which is reiterated in Rule 1403(c), is not supported by the language of 38 U.S.C. § 7111, which simply states that "[a] decision by the Board is subject to revision on the grounds of clear and unmistakable error." 35 U.S.C. § 7111(a). Turning to Rule 1403(b)(2), NOVA asserts that the rule arbitrarily limits the concept of "constructive notice" to Board decisions on or after July 21, 1992, and that 38 U.S.C. § 7111(f) implicitly endorses the doctrine of constructive notice because it requires the Secretary to "promptly transmit" requests for CUE review of Board decisions to the Board. NOVA contends that Rule 1403(c) violates the benefit of the doubt rule of 38 U.S.C. § 5107(b) because if it is unclear whether the "but for" test is met, the benefit of the doubt should be resolved in the claimant's favor and CUE should be found. NOVA challenges Rule 1403(d)(2) as in conflict with the express duty of the VA to assist a claimant. Finally, both PVA and NOVA argue that Rule 1403(e) is incorrect and ambiguous. NOVA also expresses the concern vis-a-vis Rule 1403(a) that, since what it terms "traditional" interpretations of statutes and regulations are not published, changes in the interpretation of a statute or regulation often will remain unknown.
 
 
 72
 The VA responds that, since 38 U.S.C. § 7111 does not define CUE, Rule 1403(a) fills a gap and recites the "but for" test in line with Congress' intent. The VA further responds that 38 U.S.C. § 7111 is silent as to the record that is to be considered in determining CUE, and that Rule 1403(b)(2) thus fills in a gap by stating when resort may be had to the doctrine of constructive notice to define the record. The VA argues that Rule 1403(c)'s definition of CUE is taken directly from the Court of Appeals for Veterans Claims' opinion in Russell, which Congress cited as being the foundation of the definition of CUE to be employed under 38 U.S.C. § 7111. As far as Rule 1403(d)(2) is concerned, the VA argues that the rule incorporates the holding of early court decisions into the rules, as Congress intended. Finally, the VA states that Rule 1403(e) is consistent with the general rule that the retroactive effect of a court decision on a statutory or regulatory issue only applies to cases still open on direct review, relying on the holding in Harper v. Virginia Department of Taxation, 509 U.S. 86 (1993).
 
 
 73
 We reject PVA's and NOVA's challenges to Rule 1403. First, Rule 1403(a) is consistent with 38 U.S.C. § 7111. We have stated that, in 38 U.S.C. § 5109A, which relates to CUE at the RO and which in relevant part is identical to § 7111, Congress expressly adopted the Court of Appeals for Veterans Claims' definition of CUE that requires that "a claimant must show . . . an error that would manifestly change the outcome of a prior decision." Bustos, 179 F.3d at 1381. Rules 1403(a) and 1403(c) adhere to the "but for" test affirmed in Bustos and established by the Court of Appeals for Veterans Claims in Russell, 3 Vet. App. at 313-14. See also Yates v. West, 213 F.3d 1372, 1374-75 (Fed. Cir. 2000).
 
 
 74
 Turning to Rule 1403(b)(2), § 7111 does not define what "evidence" the Board can examine in order to determine whether there is CUE. Section 7111(a) merely states that "[i]f evidence establishes error, the prior decision shall be reversed and revised," while § 7111(f) addresses the situation in which a claimant mistakenly files a claim for CUE review of a Board decision with the Secretary, resolving the problem by deeming such a filing to be with the Board. Contrary to NOVA's assertion, § 7111(f) does not speak to what evidence can be considered to have been part of the record in the prior Board decision for which the claimant seeks CUE review. It merely requires that a CUE claim that is filed with the Secretary be promptly transmitted to the Board. The VA, therefore, is reasonably using its rulemaking power to fill in a gap in the statute--the absence of an explanation for what the term "evidence" in § 7111(a) means. In that regard, the VA's adoption of a limited constructive notice rule is not arbitrary or capricious. The selection of July 21, 1992 as the date for which evidence can be deemed to be included in the prior Board decision's record by constructive notice coincides with the date of Bell, which solidified the doctrine of constructive notice. See Bell, 2 Vet. App. at 613. Considering the Bell decision's role in developing the doctrine, we will not disturb the VA's decision to pick the date of Bell to limit the doctrine's application in CUE cases. Although limiting the doctrine of constructive notice to a specific date may, arguably, resolve an ambiguity under 38 U.S.C. § 7111 against the veteran, Congress stated that the VA should adopt rules consistent with the Court of Appeals for Veterans Claims' "guidance to make consideration of appeals raising clear and unmistakable error less burdensome." H.R. Rep. No. 105-52, at 3. Limiting the date as to when the doctrine of constructive notice applies reduces the burden of adjudicating CUE claims, consistent with Congress' request. In short, we find Rule 1403(b)(2) to be valid.
 
 
 75
 We also see no defect in Rule 1403(c). The rule does not conflict with either 38 U.S.C. § 7111 or 38 U.S.C. § 5107(b). We have held that Rule 1403(c) is both "reasonable and not inconsistent with the 'benefit of the doubt' rule of 38 U.S.C. § 5107(b)." Yates, 213 F.3d at 1375. CUE does not create a "balance of the evidence" situation to which the "benefit of the doubt" rule could apply. Id.
 
 
 76
 Rule 1403(d)(2) also is not inconsistent with 38 U.S.C. § 7111. As noted above, § 7111 does not define CUE. Rule 1403(d)(2) is a reasonable implementation of Congress' intent to adopt the Court of Appeals for Veterans Claims' definition of CUE. Prior to the Act, the Court of Appeals for Veterans Claims held that failure to fulfill the duty to assist is not an error that would manifestly change the outcome of a prior decision. See Caffrey v. Brown, 6 Vet. App. 377, 383-84 (1994) (noting that an incomplete record, due to a failure to assist, is not an incorrect record that is required to establish a finding of CUE). This court has come to a similar conclusion. See Hayre v. West, 188 F.3d 1327, 1332-33, 1333 n.3 (Fed. Cir. 1999) (noting that a breach of the duty to assist "is not an error of the sort that should be contemplated in the CUE analysis," and citing, for further support, 38 C.F.R. § 20.1403(d)(2)).
 
 
 77
 Turning to Rule 1403(e), it addresses whether a change in the interpretation of a statute or regulation may support a claim of CUE when the prior Board decision represents a correct application of the statute or regulation as it was interpreted at the time of the decision. As noted above, Congress intended to codify 38 C.F.R. § 3.105(a) and the Court of Appeals for Veterans Claims' interpretation of CUE. In Russell, 3 Vet. App. at 313, the Court of Appeals for Veterans Claims concluded that "changes in the law subsequent to the original adjudication . . . do not provide a basis for revising a finally decided case." This interpretation is consistent with the concept that a claim of CUE is a collateral attack on a final RO or Board decision. See H.R. Rep. No. 105-52, at 3. The new interpretation of a statute can only retroactively effect decisions still open on direct review, not those decision that are final. See, e.g., Harper, 509 U.S. at 97 (applying the new interpretation of a federal law to the parties before the Supreme Court, and all cases "still open on direct review"). Finally, NOVA's fear that changes in the law will be unknown is unfounded because any rules of procedure or substantive rules of the VA must be published pursuant to 5 U.S.C. § 552(a)(1), and decisions of the Court of Appeals for Veterans Claims are published pursuant to 38 U.S.C. § 7269. In short, we sustain Rule 1403(e) as a valid exercise of the VA's rulemaking authority.
 
 
 78
 E. Rule 1404. Filing and Pleading requirements; withdrawal.
 
 Rule 1404(b) provides as follows:
 
 79
 (b) Specific allegations required. The motion must set forth clearly and specifically the alleged clear and unmistakable error, or errors, of fact or law in the Board decision, the legal or factual basis for such allegations, and why the result would have been manifestly different but for the alleged error. Non-specific allegations of failure to follow regulations or failure to give due process, or any other general, non-specific allegations of error, are insufficient to satisfy the requirement of the previous sentence. Motions which fail to comply with the requirements set forth in this paragraph shall be denied.
 
 
 80
 38 C.F.R. § 20.1404(b).
 
 
 81
 Rule 1404(a) establishes certain ministerial requirements with respect to a CUE motion, such as requiring the claimant to sign the motion and to include his name and the file number and the date of the Board decision the claimant wishes to have reviewed. See 38 C.F.R. § 20.1404(a). Under Rule 1409(b), a dismissal due to a failure to meet the requirements of Rule 1404(a) is without prejudice, allowing the claimant to refile the CUE motion. See 38 C.F.R. § 20.1409(b). However, under Rule 1409(c), once "there is a final decision on a [CUE motion] relating to a prior Board decision on an issue, that prior Board decision on that issue is no longer subject to revision on the grounds of [CUE]." 38 C.F.R. § 20.1409(c). Rule 1409(c) further provides that "[s]ubsequent motions relating to that prior Board decision on that issue shall be dismissed with prejudice." Id. The last sentence of Rule 1404(b) states that "[m]otions which fail to comply with the requirements set forth in this paragraph shall be denied." 38 C.F.R. § 20.1404(b). We review the denial of a CUE motion under Rule 1404(b) as a "final decision" on the motion for purposes of Rule 1409(c). See Russell, 3 Vet. App. at 315 (noting that the decision to grant or deny a CUE claim is a "final decision"). As a result, Rules 1404(b) and 1409(c) operate together to insulate from CUE review any issue in a prior Board decision that was the subject of a CUE motion that was found to be defective for any of the reasons set forth in Rule 1404(b). Consequently, the Board decision on the issue the claimant attempted to challenge in the defective CUE motion is not subject to revision due to CUE. See 38 C.F.R. § 20.1409(c).
 
 
 82
 DAV asserts that Rule 1404(b) is invalid in light of 38 U.S.C. § 7111(e), which requires the Board to decide a CUE claim "on the merits." DAV argues that Rule 1404(b), in conjunction with Rule 1409(c), operates to allow the Board to permanently deny a CUE claim without ever reaching the claim's merits. The VA responds that Rule 1404(b) does not conflict with 38 U.S.C. § 7111(e) because the denial of a CUE claim because of a lack of specificity is similar to a Fed. R. Civ. P. 12(b)(6) dismissal, which, it states, is a decision on the merits. The VA also contends that Congress noted, in the legislative history of § 7111, that CUE motions must be specific. The VA additionally notes that a claimant can appeal a denial of a CUE claim due to a failure to meet the requirements of Rule 1404(b) to the CAVC.
 
 
 83
 Rule 1404(b)'s requirement that a claimant specify the basis for his CUE claim is reasonable. The VA is correct that Congress directed the Board to promulgate rules to require CUE claims to be plead with specificity in order to "make consideration of appeals raising [CUE] less burdensome." H.R. Rep. No. 105-52, at 3. At the same time, however, as just explained, the effect of the last sentence of Rule 1404(b), in conjunction with Rule 1409(c), is to shield from CUE review any issue that is the subject of a CUE motion that is "denied" because the motion does not comply with the pleading requirements of Rule 1404(b). As a result, the Board may never decide a particular CUE claim "on the merits," as required by 38 U.S.C. § 7111(e), not because the claimant failed to establish, substantively, his CUE claim, but, rather, because of pleading defects in the motion in which the claim is first advanced. For this reason, we believe that Rule 1404(b), in the manner it operates in tandem with Rule 1409(c), is contrary to the requirement of 38 U.S.C. § 7111(e) that the Board decide a CUE claim on the merits. We therefore hold that, as it operates with Rule 1409(c), Rule 1404(b) is invalid.
 
 
 84
 As noted, the VA attempts to analogize the denial of a CUE claim under Rule 1404(b) to a dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a claim if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In contrast, Rule 1404(b) allows a CUE motion to be denied if the motion fails to "set forth clearly and specifically the alleged [CUE]." The two rules are not analogous because Fed. R. Civ. P. 12(b)(6) addresses the need to plead a colorable claim upon which relief can be granted, while Rule 1404(b) addresses the need to plead a claim with specificity. Thus, the jurisprudence behind Fed. R. Civ. P. 12(b)(6) is not applicable to the denial of a CUE motion due to the failure to meet Rule 1404(b)'s requirements. In addition, nothing in the statutory text or the legislative history of 38 U.S.C. § 7111 indicates that the inquiry into whether a CUE motion contains specific and clear allegations should be handled in the same fashion as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).
 
 
 85
 F. Rule 1405. Disposition.
 
 Rule 1405(b)-(c), (e)-(f) states:
 
 86
 (b) Evidence. No new evidence will be considered in connection with the disposition of the motion. Material included in the record on the basis of Rule 1403(b)(2) (§ 20.1403(b)(2) of this part) is not considered new evidence.
 
 
 87
 (c) Hearing.--
 
 
 88
 (1) Availability. The Board may, for good cause shown, grant a request for a hearing for the purpose of argument. No testimony or other evidence will be admitted in connection with such a hearing. The determination as to whether good cause has been shown shall be made by the member or panel to whom the motion is assigned.
 
 
 89
 (2) Submission of requests. Requests for such a hearing shall be submitted to the following address: Director, Administrative Service (014), Board of Veterans' Appeals, 810 Vermont Avenue, NW, Washington, DC 20420.
 
 
 90
 . . .
 
 
 91
 (e) Referral to ensure completeness of the record. Subject to the provisions of paragraph (b) of this section, the Board may use the various agencies of original jurisdiction to ensure completeness of the record in connection with a motion under this subpart.
 
 
 92
 (f) General Counsel opinions. The Board may secure opinions of the General Counsel in connection with a motion under this subpart. In such cases, the Board will notify the party and his or her representative, if any. When the opinion is received by the Board, a copy of the opinion will be furnished to the party's representative or, subject to the limitations provided in 38 U.S.C. 5701(b)(1), to the party if there is no representative. A period of 60 days from the date of mailing of a copy of the opinion will be allowed for response. The date of mailing will be presumed to be the same as the date of the letter or memorandum which accompanies the copy of the opinion for purposes of determining whether a response was timely filed.
 
 
 93
 38 C.F.R. § 20.1405(b)-(c),(e)-(f). Rule 1405(b) provides that new evidence (which does not include material covered by Rule 1403(b)(2)) may not be submitted with a CUE claim, while Rule 1405(c) governs the availability of, and the procedure for obtaining, a hearing before the Board on a CUE claim. See 38 C.F.R. § 20.1405(b)-(c). Rule 1405(e) allows the Board to use various agencies to ensure the completeness of the record under CUE review. Rule 1405(f) provides that the Board may request an opinion of the VA's General Counsel on a CUE claim, while permitting the claimant to respond to the opinion. See 38 C.F.R. § 20.1405(e)-(f).
 
 
 94
 PVA argues that Rule 1405(b), which prevents new evidence from being considered by the Board, is arbitrary and capricious. PVA also asserts that Rule 1405(c), which denies the right to a hearing, is arbitrary and capricious because the rule breaks from the long standing tradition of allowing a claimant access to hearings before the Board. At the same time, VVA argues that Rule 1405(e), which allows the Board to use other agencies to ensure a complete record, is contrary to 38 U.S.C. § 7111 and Rule 1403(b)(1), improperly allowing the Board to gather evidence that was not part of the record formed in the prior Board decision under review. DAV and VVA additionally contend that Rule 1405(f) conflicts with § 7111(e), which requires the Board to decide a CUE claim on the merits without referral "to any adjudicative or hearing official acting on behalf of the Secretary," by allowing the Board to use an opinion of the General Counsel to help it decide CUE claims.
 
 
 95
 The VA argues that Rule 1405(b) is derived from the Court of Appeals for Veterans Claims' decision in Russell concerning 38 C.F.R. § 3.105(a). Russell noted that the nature of CUE demands that no evidence be considered that was not part of the record in the prior Board decision under review. See Russell, 3 Vet. App. at 314. The VA further urges that Rule 1405(c) is not arbitrary and capricious because, since CUE is purely a legal issue, see Russell, 3 Vet. App. at 313, a hearing is not necessary, and the rule still grants a hearing under certain circumstances. The VA defends Rule 1405(e) on the ground that the rule does not allow the Board to gather evidence that was not of record, but simply ensures that the reviewing Board has all the evidence of record that was before the Board in the prior decision that is under review. Finally, the VA argues that Rule 1405(f) is not defective because it does not allow any entity other than the Board to decide the merits of a CUE claim. The VA asserts that the rule permits nothing more than legal advice and assistance from the General Counsel. We agree with these arguments.
 
 
 96
 Rule 1405(b) does not conflict with 38 U.S.C. § 7111. As far as the legislative history of § 7111 is concerned, Congress endorsed the Court of Appeals for Veterans Claims' definition of CUE that requires the CUE to be based on evidence of record, not new evidence. See Russell, 3 Vet. App. at 313-14. Thus, Rule 1405(b) implements the definition of CUE intended under § 7111. In any event, under 38 U.S.C. § 5108, a claimant can collaterally attack the previous disallowance of a claim with new and material evidence. We believe that Rule 1405(c) also is consistent with § 7111 and the intent of Congress. Congress specifically requested that the VA promulgate rules that would make the pursuit of CUE claims less burdensome. See H.R. Rep. No. 105-52, at 3. It strikes us that Rule 1405(c) reasonably does that by prohibiting an evidentiary hearing, while at the same time allowing argument on a CUE claim when good cause is shown. For its part, Rule 1405(e) aids in the implementation of Rule 1403(b)(1) ("Review for clear and unmistakable error in a prior Board decision must be based on the record and the law that existed when that decision was made."), by ensuring that the record is complete. This procedural rule, that merely provides for a proper CUE review of a Board decision, is not contrary 38 U.S.C. § 7111; nor is it arbitrary or capricious.
 
 
 97
 Neither does Rule 1405(f) conflict with § 7111(e). Section 7111(e) mandates that the Board decide a CUE claim on the merits "without referral to any adjudicative or hearing official acting on behalf of the Secretary." 38 U.S.C. § 7111(e). The VA's General Counsel is not an "adjudicative or hearing official." In addition, Rule 1405(d) specifically prevents the action prohibited under § 7111(e) from occurring by stating that the Board cannot refer a CUE matter to an official "for the purpose of deciding the motion." 38 C.F.R. § 1405(d). Moreover, Rule 1405(f) only allows the Board to "secure opinions of the General Counsel," 38 C.F.R. § 20.1405(f), and the rule incorporates the procedural safeguards of requiring that a claimant be notified when the Board requests a General Counsel opinion and of giving the claimant an opportunity to respond to the opinion. See id.
 
 
 98
 G. Rule 1406. Effect of revision; discontinuance or reduction of benefits.
 
 Rule 1406 states:
 
 99
 (a) General. A decision of the Board that revises a prior Board decision on the grounds of clear and unmistakable error has the same effect as if the decision had been made on the date of the prior decision.
 
 
 100
 (b) Discontinuance or reduction of benefits. Revision of a prior Board decision under this subpart that results in the discontinuance or reduction of benefits is subject to laws and regulations governing the reduction or discontinuance of benefits by reason of erroneous award based solely on administrative error or errors in judgment.
 
 
 101
 38 C.F.R. § 20.1406. Rule 1406(a) provides that if CUE is found, and the Board revises a decision to give benefits, benefits shall be given retroactively, as of the date of the original Board decision. See 38 C.F.R. § 20.1406(a). Rule 1406(b), on the other hand, establishes that if the Board reduces or discontinues benefits due to CUE, this decrease in benefits will follow the general procedures already established to govern a reduction or discontinuance of benefits that is based on administrative errors or errors of judgment. See 38 C.F.R. § 20.1406(b). These general procedures, as described in 38 C.F.R. § 3.500, establish that "[w]here an award is reduced, the reduced rate will be effective the day following the date of discontinuance of the greater benefit." Thus, the reduction of benefits, under 38 C.F.R. § 20.1406(b), takes effect only from the date of the decision finding CUE, not the prior Board decision.
 
 
 102
 NOVA argues that Rule 1406 is contrary to § 7111 because it creates and allows for two different types of CUE determinations, those where the Board revises a previous non-award of benefits and those where the Board revises a previous award of benefits. NOVA asserts that this rule unfairly burdens claimants by creating a higher standard for CUE claims that are initiated by the claimant, as opposed to CUE claims initiated by the Board. The VA responds that NOVA has misconstrued Rule 1406 because the effect of the rule is not to redefine CUE, but simply to govern the effect of CUE revision of a Board decision on a claimant's benefits. The VA notes that 38 U.S.C. § 7111(b) is silent as to the effect of a CUE revision that actually reduces benefits, and that Rule 1406 simply fills this gap left by Congress' silence.
 
 
 103
 Rule 1406 is not contrary to 38 U.S.C. § 7111; nor is it arbitrary or capricious. As the VA argues, the rule does not define CUE, but simply indicates what effect a finding of CUE will have on a claimant's benefits. Section 7111(b) is for "the purposes of authorizing benefits." 38 U.S.C. § 7111(b). Rule 1406(a) implements the language of § 7111(b) that indicates that, when a Board decision denying benefits is reversed or revised due to CUE, benefits should begin from the date of the Board decision found to contain CUE. See 38 C.F.R. § 20.1406(a). Rule 1406(b), on the other hand, addresses the situation when benefits are reduced or denied, a situation not addressed by 38 U.S.C. § 7111.[7] Rule 1406(b) reasonably fills a gap left by Congress. In addition, the VA drafted Rule 1406(b) to be claimant friendly, only allowing the reduction or elimination of benefits to begin on the date CUE is found.
 
 
 104
 H. Rule 1409. Finality and Appeal.
 
 Rule 1409(c) states:
 
 105
 (c) Once there is a final decision on a motion under this subpart relating to a prior Board decision on an issue, that prior Board decision on that issue is no longer subject to revision on the grounds of clear and unmistakable error. Subsequent motions relating to that prior Board decision on that issue shall be dismissed with prejudice.
 
 
 106
 38 C.F.R. § 20.1409(c).
 
 
 107
 PVA argues that Rule 1409(c) is arbitrary and capricious because it only gives a claimant one chance at challenging a prior Board decision on an issue for CUE. The VA asserts in response that the rule promotes the interests of judicial economy and finality of decisions. We agree with the VA.
 
 
 108
 Rule 1409(c) is neither arbitrary and capricious nor contrary to law. It simply prevents a claimant from refiling a CUE claim on a particular issue in a Board decision when there already has been a final decision on the merits on a CUE claim relating to that issue, as required by 38 U.S.C. § 7111(e). That makes sense. Once a claimant obtains a final decision on a CUE claim regarding a particular issue, that claimant should not be allowed to present the same challenge again, especially since a CUE claim is, itself, a collateral attack on an otherwise final prior Board decision. Furthermore, Rule 1409(c) is in line with the Court of Appeals for Veterans Claims' interpretation of 38 C.F.R. § 3.105(a), see Russell, 3 Vet. App. at 315 (stating that "[o]nce there is a final decision on the issue of 'clear and unmistakable error' because the AOJ decision was not timely appealed, or because a BVA decision not to revise or amend was not appealed to this Court, or because this Court has rendered a decision on the issue in that particular case, that particular claim of 'clear and unmistakable error' may not be raised"), which Congress intended to codify in 38 U.S.C. § 7111.[8]
 
 
 109
 I. Rule 1411. Relationship to other statutes.
 
 
 110
 Rule 1411 states:(a) The "benefit of the doubt" rule of 38 U.S.C. 5107(b) does not apply to the Board's decision, on a motion under this subpart, as to whether there was clear and unmistakable error in a prior Board decision.
 
 
 111
 (b) A motion under this subpart is not a claim subject to reopening under 38 U.S.C. 5108 (relating to reopening claims on the grounds of new and material evidence).
 
 
 112
 (c) A motion under this subpart is not an application for benefits subject to any duty associated with 38 U.S.C. 5103(a) (relating to applications for benefits).
 
 
 113
 (d) A motion under this subpart is not a claim for benefits subject to the requirements and duties associated with 38 U.S.C. 5107(a) (requiring "well-grounded" claims and imposing a duty to assist).
 
 
 114
 38 C.F.R. § 20.1411.
 
 
 115
 PVA challenges Rule 1411(a) as being contrary to the clear meaning of 38 U.S.C. § 5107(b), which establishes the "benefit of the doubt" rule.[9] VVA argues that Rule 1411(b) is contrary to 38 U.S.C. § 5108, which allows a claim to be reopened upon the submission of new and material evidence. VVA also asserts that Rules 1411(c) and 1411(d) are contrary to the intent of Congress, which was that a CUE claim be considered the same as any other claim, and that a claimant thus should be able to obtain assistance under 38 U.S.C. §§ 5103(a) and 5107(a).[10]
 
 
 116
 The VA argues that Rule 1411(a) is supported by Congress' intent to codify the Court of Appeals for Veterans Claims' definition of CUE that explicitly excludes the "benefit of the doubt rule" from CUE analysis, see Russell, 3 Vet. App. at 313-14. The VA also argues that Rule 1411(b) implements the definition of CUE that requires a Board decision to be based on the record before the Board at the time of the prior decision, see Russell, 3 Vet. App. at 314. The VA additionally contends that Rule 1411(c) is proper because a CUE claim is not a claim for benefits, and thus is not governed by 38 U.S.C § 5103(a). The VA finally asserts that Rule 1411(d) represents a proper exercise of the VA's rulemaking authority because a CUE claim does not involve new evidence, as previously noted, and thus, the duty to assist a claimant in developing facts to support a claim, see 38 U.S.C. § 5107(a) as previously in effect, does not arise.
 
 
 117
 We reject PVA's and VVA's challenges to Rule 1411. First, as we noted above in discussing Rule 1403(c), CUE is an error where there can never be a "balance of the evidence situation" in which there must be "benefit of the doubt" in favor of the veteran. See Yates, 213 F.3d at 1374-75 (affirming the validity of 38 C.F.R. § 20.1411(a)). At the same time, Rule 1411(b) does not conflict with 38 U.S.C. § 5108 because, by definition, new and material evidence plays no role in the evaluation of a previous Board decision for CUE, as we noted in discussing Rule 1405(b). Neither do we find merit in the challenges to Rules 1411(c) and 1411(d). As we noted in Haines, 154 F.3d at 1300, a CUE claim is unique and, thus, should not be governed by statutes such as 38 U.S.C. §§ 5103(a) and 5107(a) which apply to regular claims for benefits. Section 5103(a), at the time Rule 1411(c) was promulgated, required the Secretary to "notify the claimant of the evidence" needed to complete an application for benefits.[11] Such a request does not apply to a CUE claim, which, as noted above with regards to Rule 1405(b), does not involve the submission of new evidence. Section 5107(a), at the time Rule 1411(d) was promulgated, stated that the Secretary had a duty to assist "in developing the facts pertinent to the claim." Again, a CUE claim does not implicate evidence other than that already contained in the prior Board decision's record. Under a CUE claim, there is no reason for aid by the Secretary to develop new facts.[12]
 
 CONCLUSION
 
 118
 We hold that CUE Rule 1404(b) (codified at 38 C.F.R. § 20.1404(b)) is invalid because, in conjunction with the CUE Rule 1409(c) (codified at 38 C.F.R. § 20.1409(c)), it operates to prevent Board review of any CUE claim that is the subject of a motion that is denied for failure to comply with the pleading requirements of Rule 1404(b). That is contrary to the requirement of 38 U.S.C. § 7111(e) that a CUE claim "shall be decided by the Board on the merits." However, we hold that the other rules challenged by Petitioners are consistent with title 38 of the United States Code, and are not arbitrary, capricious, or abuses of discretion. We also hold that none of the challenged rules were adopted in a defective rulemaking process. The petitions are therefore
 
 
 119
 GRANTED-IN-PART and DENIED-IN-PART.
 
 COSTS
 
 120
 Each party shall bear its own costs.
 
 
 
 NOTES:
 
 
 [1]
 All regulatory references are to the 1999 version of the Code of Federal Regulations. All statutory references are to the 1994 version of the United States Code, as modified by Supplement IV of 1998.
 
 
 [2]
 The VA further amended the rules on December 30, 1999, amending Rule 1400(b)(1) by removing the phrase "Those decisions" and replacing it with "Decisions on issues," making Rule 1400(b)(1) parallel to Rule 1400(b)(2). 64 Fed. Reg. 73413.
 
 
 [3]
 Even though Petitioners challenge multiple rules in their petitions, we will only address those challenges that were briefed. See Fed. R. App. P. 28(a)(5),(8),(9);see also Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 800 (Fed. Cir. 1990) ("A]n issue not raised by an appellant in its opening brief . . . is waived.").
 
 
 [4]
 DAV filed its petition within 60 days of both the rules' publication and their effective date. Therefore, under either interpretation of the term "issuance," DAV's petition was timely. DAV only petitions for review of Rules 1400(b), 1404(b), and 1405(f), however. NOVA, PVA, and VVA petition for review of other rules under chapter 20 of title 38; in order for us to entertain challenges to those rules, NOVA's, PVA's, and VVA's petitions must have been timely filed. See Fed. Cir. R. 47.12(a).
 
 
 [5]
 The VA has general substantive rulemaking power regarding veterans' benefits, see Gilpin v. West, 155 F.3d 1353, 1356 n.2 (Fed. Cir. 1998). In addition, in the case of 38 U.S.C. § 7111, Congress stated that the VA should adopt procedural rules consistent with the Court of Appeals for Veterans Claims' "guidance to make consideration of appeals raising clear and unmistakable error less burdensome." H.R. Rep. No. 105-52, at 3.
 
 
 [6]
 The doctrine of constructive notice is defined in Bell v. Derwinski, 2 Vet. App. 611, 612-13 (1992). In that case, the Court of Appeals for Veterans Claims decided that documents that were in the VA's control at the time of the Board's decision, such as medical records generated by the VA, but that were not actually known to the Board, should be considered, constructively, as part of the record that was before the Board if the items could reasonably be expected to be part of the record. See id.
 
 
 [7]
 The Board can institute, sua sponte, its own CUE review of a decision. See 38 U.S.C. § 7111(c).
 
 
 [8]
 As explained above, Rule 1404(b), in conjunction with Rule 1409(c), operates to produce a result that is contrary to the requirement of 38 U.S.C. § 7111(e) that a CUE claim be decided on the merits. That problem does not arise from the language of Rule 1409(c), however. Rather, it is caused by the last sentence of Rule 1404(b), which states that a CUE motion that does not comply with the pleading requirements of Rule 1404(b) "shall be denied." That makes a Rule 1404(b) ruling "a final decision" under Rule 1409(c). The consequence of that is that a subsequent CUE motion on the issue that was the subject of the CUE claim in the defective motion is "dismissed with prejudice." As a result, the CUE claim is not decided on the merits.
 
 
 [9]
 At the time Rule 1411 was promulgated, § 5107(b) required that:
 When, after consideration of all evidence and material of record in a case before the Department with respect to benefits under laws administered by the Secretary, there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. Nothing in this subsection shall be construed as shifting from the claimant to the Secretary the burden specified in subsection (a) of this section.
 Section 5107(b) was amended on November 9, 2000, by the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475 (2000) ("Veterans Claims Act" or "Act"). Section 5107(b) now reads:
 BENEFIT OF THE DOUBT- The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.
 The Veterans Claims Act's changes to § 5107 apply to (1) all claims filed on or after the date of enactment of the Act or (2) those claims filed before the Act but not final as of the date of enactment. Veterans Claims Act, § 7(a).
 
 
 [10]
 At the time Rule 1411 was promulgated, § 5103(a) required the Secretary to notify a claimant that the "claimant's application for benefits . . . is incomplete" and to inform the claimant "of the evidence necessary to complete the application." 38 U.S.C. § 5103(a).
 At the time Rule 1411 was promulgated, § 5107(a) stated that a claimant had the burden of "submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). In addition, § 5107(a) provided that "[t]he Secretary shall assist such a claimant in developing the facts pertinent to the claim." Id.
 Both 38 U.S.C. §§ 5103(a) and 5107(a) were amended by the Veterans Claims Act. Section 5103(a) now reads:
 REQUIRED INFORMATION AND EVIDENCE- Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.
 Section 5107(a) now reads:
 CLAIMANT RESPONSIBILITY- Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary.
 As noted above, section 7 of the Veterans Claims Act establishes the effective date of the Act's changes to § 5107.
 
 
 [11]
 As noted above, the requirements of § 5103(a) have been revised somewhat by the Veterans Claims Act.
 
 
 [12]
 As amended by the Veterans Claims Act, § 5107(a) does not provide for assistance by the Secretary.