# United States Court of Appeals for the Federal Circuit

---

**KEVIN R. GEORGE,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2019-1916

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-2174, Chief Judge Margaret C. Bartley, Judge Amanda L. Meredith, Senior Judge Robert N. Davis.

-------------------------------------------------

**MICHAEL B. MARTIN,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1134

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-124, Chief Judge Margaret C. Bartley.

————————————

Decided: March 16, 2021

————————————

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant Kevin R. George.

AMY F. ODOM, Chisholm Chisholm & Kilpatrick, Providence, RI, argued for claimant-appellant Michael B. Martin. Also represented by APRIL DONAHOWER, ZACHARY STOLZ.

TANYA KOENIG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ERIC P. BRUSKIN, JEFFREY B. CLARK, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.; BRIAN D. GRIFFIN, ANDREW J. STEINBERG, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before LOURIE, CHEN, and STOLL, *Circuit Judges*.

CHEN, *Circuit Judge*.

Kevin R. George and Michael B. Martin (collectively, Appellants) are military veterans whose respective claims for disability benefits were denied several decades ago in final decisions by the Department of Veterans Affairs (VA). More recently, Appellants each filed a motion for revision of those denial decisions, alleging that the VA in those decisions had committed clear and unmistakable error (CUE). The VA's denials had been based in part on a straightforward application of a then-existing regulation,

38 C.F.R. § 3.304(b) ("Presumption of soundness"), that was years later overturned.  In Appellants' view, the VA's reliance on a now-invalidated regulation in its denials of Appellants' original claims establishes CUE.

The United States Court of Appeals for Veterans Claims (Veterans Court) affirmed the Board of Veterans' Appeals' (Board) denials of Appellants' CUE motions, reasoning that the VA did not commit a clear and unmistakable legal error when it faithfully applied the version of the presumption of soundness regulation that existed at the time of the denials.  Because *Jordan v. Nicholson* and *Disabled American Veterans v. Gober* establish that a legal-based CUE requires a misapplication of the law as it was understood at that time, and cannot arise from a subsequent change in interpretation of law by the agency or judiciary, we *affirm*.  *See Jordan v. Nicholson*, 401 F.3d 1296 (Fed. Cir. 2005); *Disabled Am. Veterans v. Gober*, 234 F.3d 682 (Fed. Cir. 2000) (*DAV*), *overruled in part on other grounds by Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 981 F.3d 1360, 1373 (Fed. Cir. 2020) (en banc).

## BACKGROUND

These companion appeals involve similar facts and legal issues.  Before discussing the details of each case, we first address the statutory presumption of soundness at issue in both appeals.

### A.  Statutory Presumption of Soundness

The statutory presumption of soundness recites:

> [E]very veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury

> or disease *existed before acceptance and enrollment and was not aggravated by such service.*

38 U.S.C. § 311 (1970) (now codified as 38 U.S.C. § 1111)[1] (emphasis added). Under this standard, a veteran is presumed to have been in sound condition at entry to service as to disorders that are not identified on the veteran's entrance medical examination. The presumption, however, can be rebutted by "clear and unmistakable evidence" that the disorder "existed before acceptance and enrollment and was not aggravated by service." *Id.*

In 1970, the VA's implementing regulation for § 1111 did not require clear and unmistakable evidence of lack of aggravation by service for rebuttal. *See* 38 C.F.R. § 3.304(b) (1970).[2] In other words, for the VA to rebut the presumption of soundness, the 1970 version of § 3.304(b) required only clear and unmistakable evidence that the disorder "existed prior [to service]." *Id.* This version of the regulation prevailed until 2003, when the VA invalidated the regulation for conflicting with the language of § 1111, *see* VA Gen. Counsel Prec. 3–2003 (July 16, 2003) (2003

---

[1]    For ease of reference, we hereafter refer to the statutory presumption of soundness as 38 U.S.C. § 1111.

[2]    Specifically, 38 C.F.R. § 3.304(b) (1970) stated:

> The veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that *an injury or disease existed prior thereto.* Only such conditions as are recorded in examination reports are considered as noted.

*Id.* (emphasis added). This language remained unchanged from the time of Mr. Martin's 1970 regional office decision to Mr. George's 1977 Board decision.

OGC opinion), and subsequently amended the regulation to require evidence of *both* preexisting condition and no aggravation, *see* 70 Fed. Reg. 23,027, 23,028 (May 4, 2005).

We confirmed the correctness of the VA's changed understanding of the statute in *Wagner v. Principi*, 370 F.3d 1089 (Fed. Cir. 2004). There, we began our statutory analysis by acknowledging that § 1111's "rebuttal standard is somewhat difficult to parse" and "on its face . . . appears to be somewhat self-contradictory." *Id.* at 1093. After a careful examination of the statutory history, we determined that Congress intended for the presumption of soundness to apply "even when there was evidence of a preexisting condition, [so long as] the government failed to show clear and unmistakable evidence that the preexisting condition was not aggravated" by service. *Id.* at 1096. *Wagner* thus held that the VA must show "clear and unmistakable evidence of both a preexisting condition and a lack of in-service aggravation to overcome the presumption of soundness." *Id.*

## B. Mr. George's Appeal

Mr. George served in the U.S. Marine Corps from June to September 1975. His medical entrance examination made no mention of any psychiatric disorders. Yet, a week after enlistment, Mr. George suffered a psychotic episode requiring extended hospitalization and was diagnosed with paranoid schizophrenia. Two months into his service, a military medical board confirmed the schizophrenia diagnosis and found Mr. George unfit for duty. The medical board determined that his condition had preexisted service because he had experienced "auditory hallucinations, paranoid ideas of reference, and delusions" prior to enlistment. J.A. 53–54. The medical board also determined that his condition was aggravated by service, observing that he "now appeared quite disturbed" and was "withdrawn [and] tearful." *Id.* At his time of discharge, however, a physical evaluation board concluded that his condition was *not*

aggravated by service, finding that Mr. George "essentially appear[ed] in his preenlistment state" and that his schizophrenia was "in remission." J.A. 55.

In December 1975, Mr. George filed a disability benefits claim, contending that his schizophrenia was aggravated by service. The VA regional office (RO) denied his claim for lack of service connection, which the Board affirmed in September 1977. While the Board did not specifically cite the statutory presumption of soundness or the implementing regulation, it concluded that his schizophrenia "existed prior to military service" and "was not aggravated by his military service." J.A. 60. Mr. George did not appeal the Board's decision, which became final.

Years later, in December 2014, Mr. George requested revision of the 1977 Board decision based on CUE, asserting that the Board had failed to correctly apply 38 U.S.C. § 1111. Mr. George argued that he had been improperly denied the presumption of soundness because his "entrance examination to service was negative for any preservice mental disorder" and the record "[did] not clearly and unmistakably indicate that [his] schizophrenia was not aggravated by service." J.A. 66–67. If not for the 1977 Board's purported failure to "rebut *both* prongs of the presumption," Mr. George alleged that he would have been granted service-connected benefits for schizophrenia. J.A. 67 (emphasis added).

The Board, in 2016, denied Mr. George's request, finding no CUE in the 1977 Board decision. Relevant to this appeal, the Board observed that, as of 1977, 38 C.F.R. § 3.304(b) did "not require[] clear and unmistakable evidence that the disability was not aggravated by service" to rebut the presumption of soundness. J.A. 73. While acknowledging that the 2003 OGC opinion and *Wagner* later invalidated § 3.304(b) for conflicting with the statute, the Board concluded that "judicial decisions that formulate new interpretations of the law subsequent to a VA decision

cannot be the basis of a valid CUE claim." J.A. 74. Thus, any purported failure by the 1977 Board to find that Mr. George's schizophrenia was not clearly and unmistakably aggravated by service "cannot be considered to be CUE." *Id.* Mr. George appealed to the Veterans Court.

A divided panel of the Veterans Court affirmed, concluding that *Wagner*'s interpretation of § 1111 could not retroactively apply to establish CUE in the 1977 Board decision. *See George v. Wilkie*, 30 Vet. App. 364, 373 (2019) ("*Wagner* does not change how [§ 1111] was interpreted or understood before it issued."). Instead, citing this court's decisions in *DAV* and *Jordan*, the Veterans Court determined that the 1977 Board was required to apply the law *existing at the time*, namely, the 1977 version of 38 C.F.R. § 3.304(b). Because that version of § 3.304(b) required only clear and unmistakable evidence that an injury preexisted service to rebut the presumption of soundness, the Veterans Court concluded that the 1977 Board's alleged failure to also demonstrate clear and unmistakable evidence of no aggravation did not constitute CUE. *Id.* at 374–75.

The Veterans Court next considered a trio of cases involving a CUE claim filed by a widow, Mrs. Patrick, seeking death and indemnity compensation benefits. *See Patrick v. Principi*, 103 F. App'x 383 (Fed. Cir. 2004) (*Patrick I*); *Patrick v. Nicholson*, 242 F. App'x 695 (Fed. Cir. 2007) (*Patrick II*); *Patrick v. Shinseki*, 668 F.3d 1325 (Fed. Cir. 2011) (*Patrick III*). As relevant here, *Patrick II* concluded that *Wagner* could form the basis for a CUE claim attacking a final VA decision that had relied on the now-invalidated version of § 3.304(b), because "[*Wagner*'s] interpretation of § 1111 . . . did not change the law but explained what § 1111 had always meant." *Patrick II*, 242 F. App'x at 698.

The Veterans Court determined that it was not bound by the *Patrick* cases, which contradicted the reasoning of *DAV* and *Jordan. George*, 30 Vet. App. at 374–75. *Patrick*

*II*, the main case supporting Mr. George's position, was nonprecedential and issued after *DAV* and *Jordan*, and *Patrick III*, the only precedential opinion in this line of cases, pertained to attorneys' fees under the Equal Access to Justice Act (EAJA) and did not directly address whether *Wagner* supports a basis for CUE.

The Veterans Court also determined that permitting retroactive application of *Wagner*'s statutory interpretation would contravene the law on finality of judgments. While recognizing that "CUE is a statutorily permitted collateral attack on final VA decisions," the court observed that "Mr. George's appeal of the denial of benefits for schizophrenia was not open for *direct* review when *Wagner* was decided," and to hold that a judicial pronouncement of the law retroactively applies to final decisions closed to direct review would undermine long-standing principles of finality and *res judicata*. *George*, 30 Vet. App. at 372–73, 376 (citing *Harper v. Va. Dep't of Taxation*, 509 U.S. 86 (1993) and *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991)). CUE instead requires "the application of the law as it was understood at the time of the [underlying] decision," and such an application of law "does not become CUE by virtue of a subsequent interpretation of the statute or regulation." *George*, 30 Vet. App. at 373.[3]

---

[3] The Veterans Court majority also concluded that even assuming *Wagner* retroactively applies to support allegations of CUE in final VA decisions, Mr. George failed to demonstrate that this alleged error, based on the evidence extant in 1977, would have manifestly changed the outcome of the 1977 Board's decision to deny him benefits for schizophrenia. *George*, 30 Vet. App. at 377–78. Because we conclude that the error alleged is outside the scope of CUE, as discussed *infra*, we need not reach this alternative holding.

A dissenting judge opined that *Wagner* merely provided an "authoritative statement" of what § 1111 has always meant and thus should not be understood as implementing a "new understanding or interpretation" of that statute. *Id.* at 379. The dissent further concluded that the 1977 Board's failure to abide by § 1111's true meaning "constituted an undebatable and outcome-determinative misapplication of the law," which is "precisely" the type of error CUE was designed to remedy. *Id.* at 383.

## C.  Mr. Martin's Appeal

Mr. Martin served in the U.S. Army from August 1965 to February 1966, and from June 1968 to August 1969. At entry to service, Mr. Martin reported never having had "asthma," "shortness of breath," or "hay fever," J.A. 13, and his medical examination reported his lungs and chest as "normal," J.A. 15. During his second period of service, in November 1968, he sought treatment at an allergy clinic for a stuffy nose, sneezing, itchy eyes, and nocturnal wheezing. Contrary to his entrance examination, Mr. Martin reported a childhood history of asthma with similar symptoms. A note from his personal physician, dated January 1969, confirmed that Mr. Martin had started treatment for asthma as a child and had been "treated for this problem intermittently since that time." J.A. 10. A medical examiner diagnosed and treated Mr. Martin for "rhinitis and asthma, mixed infectious-allergic, with dust-mold and ragweed sensitivity." J.A. 11. By discharge, however, his separation examination did not report any asthma or related symptoms.

Shortly thereafter, in October 1969, Mr. Martin filed a claim for service-connected disability benefits for asthma. In support of his claim, Mr. Martin underwent a VA medical examination in December 1969, which noted that he had "made a good adjustment" following in-service treatment, but upon returning home after discharge, had experienced wheezing and shortness of breath during the

ragweed season.  J.A. 21.  Mr. Martin was diagnosed with "[a]sthma due to sensitivity of ragweed class."  J.A. 24.

The RO denied Mr. Martin's claim in February 1970 for lack of service connection.  The RO found that following Mr. Martin's November 1968 treatment at the allergy clinic, there was "no further showing of complaints relative to asthma in service and [the] separation examination was negative."  J.A. 26.  While acknowledging that Mr. Martin had reported asthma symptoms in his December 1969 medical examination four months after service, the RO concluded that: "In view of the pre-service history of asthma[,] it is held that the solitary exacerbation in service with a subsequent asymptomatic period of better than a year does not establish aggravation."  J.A. 25–26.  Mr. Martin did not appeal the RO decision.

In July 2013, Mr. Martin requested revision of the 1970 RO decision based on CUE, contending that the RO had failed to correctly apply "both" prongs of 38 U.S.C. § 1111.  J.A. 27–28.  As with Mr. George's case, the Board denied the request, finding no CUE in the 1970 RO decision because the regulation in force at that time did not require clear and unmistakable evidence of no aggravation.  J.A. 39–40.  Citing *George*, the Veterans Court affirmed the Board's decision:

> The denial of service connection in *George*, like the RO's denial here, predated the Federal Circuit's decision in *Wagner v. Principi* . . . . *George* held that *Wagner* does not apply retroactively to final decisions and affirmed the Board's finding that the VA decision did not contain CUE.  The Court must reach the same conclusion here and affirm the Board's . . . finding that the February 1970 rating decision does not contain CUE.

*Martin v. Wilkie*, No. 18-0124, 2019 WL 3449689, at *3 (Vet. App. July 31, 2019) (citations omitted).

Both Mr. George and Mr. Martin timely appealed to this court. We have jurisdiction under 38 U.S.C. § 7292.

## DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is prescribed by statute. *Scott v. Wilkie*, 920 F.3d 1375, 1377–78 (Fed. Cir. 2019). We may "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof" and "interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). We review claims of legal error in a decision of the Veterans Court without deference. *See Szemraj v. Principi*, 357 F.3d 1370, 1374–75 (Fed. Cir. 2004).

A motion for revision based on "clear and unmistakable error" is a statutorily authorized collateral attack on a final decision of the Board or RO that, if successful, results in a "reversed or revised" decision having "the same effect as if [it] had been made on the date of the [original] decision." *See* 38 U.S.C. §§ 7111, 5109A.[4] In other words, a meritorious CUE claimant may be entitled to benefits retroactive to the date of the original claim. CUE, however, is a "very specific and rare type of error," *Cook v. Principi*, 318 F.3d 1334, 1345 (Fed. Cir. 2002) (en banc), and must be based on "the record and the *law that existed at the time of the prior adjudication* in question," such that "[e]ither the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions *extant at the time* were incorrectly applied," *see Willsey v. Peake*, 535 F.3d 1368, 1371 (Fed. Cir. 2008) (emphases added) (citing *Russell v. Principi*, 3 Vet. App. 310, 313–14 (1992) (en banc)). CUE must also be an "undebatable"

---

[4]    38 U.S.C. § 7111 governs CUE arising from a Board decision whereas § 5109A governs CUE arising from an RO decision.

error that would have "manifestly changed the outcome at the time it was made." *Willsey*, 535 F.3d at 1371.

## A

Appellants first contend that their CUE claims do not seek to retroactively apply a changed interpretation of the law and, instead, are simply premised on the VA's purported failure to correctly apply the statute as written. Appellants assert that § 1111's meaning is plain and unambiguous, regardless of the VA's contrary interpretation set forth at the time in § 3.304(b). Rather than establish a "new" interpretation of § 1111, Appellants argue that *Wagner* "merely provided an authoritative statement of what [§ 1111] had *always* meant," including at the time of Appellants' respective VA decisions. *See* Martin Appellant's Br. 8 (internal quotation marks omitted) (citing *Rivers v. Roadway Exp., Inc.*, 551 U.S. 298, 313 n.12 (1994)). This reasoning, Appellants contend, comports with our nonprecedential decision in *Patrick II*, where we permitted a CUE claim to proceed based on the argument that the VA had "misapplied § 1111." *See Patrick II*, 242 F. App'x at 698.

We disagree with Appellants' argument because it overlooks the significance of the VA's regulation that existed at the time of the original decisions and fails to account for our caselaw. *Jordan*, in view of *DAV*, squarely forecloses Appellants' argument that *Wagner*'s later-in-time interpretation of § 1111 can serve as the basis for CUE. *DAV* upheld, over rulemaking challenge, the validity of CUE regulation 38 C.F.R. § 20.1403(e), which expressly states that CUE "does not include the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a *change in the interpretation* of the statute or regulation." *See DAV*,

234 F.3d at 695–98 (emphasis added).[5]  In analyzing the regulation's specific carve-out of subsequent, changed interpretations as a basis for CUE, we clarified that "[t]he new interpretation of a statute can only retroactively [a]ffect decisions still open on direct review, not those decisions that are final." *Id.* at 698.  This limit on CUE, we explained, is consistent with Congress' intent that "changes in the law subsequent to the original adjudication . . . do not provide a basis for revising a finally decided case." *Id.* at 697–98.  *DAV* thus established that CUE must be analyzed based on the law as it was *understood at the time* of the original decision and cannot arise from a subsequent change in the law or interpretation thereof to attack a final VA decision.

*Jordan* subsequently applied *DAV*'s understanding of CUE to the statutory presumption of soundness.  There, in

---

[5]    38 C.F.R § 20.1403 governs CUE in Board decisions, whereas 38 C.F.R. § 3.105 governs CUE in RO decisions.  We note that in 2019, § 3.105 was amended to include subsection (a)(1)(iv), which mirrors the language of § 20.1403(e).  *See VA Claims and Appeals Modernization*, 84 Fed. Reg. 138 (Jan. 18, 2019) (final rule).  In promulgating § 3.105(a)(1)(iv), the VA explained that "no substantive changes [were] intended to the existing law governing revision of final [RO] decision based on CUE," *see VA Claims and Appeals Modernization*, 83 Fed. Reg. 39,818, 39,820 (Aug. 10, 2018) (notice of proposed rulemaking), and the purpose of the amendment was to "conform[]" the regulation governing CUE in final RO decisions with the existing regulation governing final Board decisions, 84 Fed. Reg. at 142.  Mr. Martin acknowledges that the substance of § 3.105(a)(1)(iv) applies to his appeal, *see* Martin Appellant's Reply Br. 6 n.2, and makes no attempt to distinguish *DAV* and *Jordan* based on the governing CUE regulation (§ 20.1403 vs. § 3.105) or statute (§ 7111 vs. § 5109A).

1983, the Board denied Mr. Jordan's benefits claim for lack of service connection under then-governing 38 C.F.R. § 3.304(b)—the same version of the regulation that was applied to Appellants' original claims. *See Jordan*, 401 F.3d at 1297. Mr. Jordan never appealed the Board's decision, which became final. Several years later, in 1999, Mr. Jordan filed a CUE claim asserting that the 1983 Board had "misinterpreted provisions in 38 U.S.C. § 1111." *Id.* Like Appellants, Mr. Jordan claimed that § 1111's presumption of soundness had not been rebutted because the 1983 Board had failed to establish that his preexisting condition was not aggravated by service. The Board denied his CUE claim, and Mr. Jordan then appealed to the Veterans Court. While his Veterans Court appeal was pending, the VA issued its 2003 OGC opinion invalidating 38 C.F.R. § 3.304(b) for conflicting with § 1111. Nevertheless, the Veterans Court found no CUE because, as *DAV* held, CUE "does not include the otherwise correct application of a statute or regulation" where there has been a subsequent "change in the interpretation of [that] statute or regulation." *Id.* On appeal before us, Mr. Jordan argued that there was no subsequent change in interpretation because 38 C.F.R. § 3.304(b) was "void *ab initio*" for being contrary to § 1111's "facially apparent meaning." *Id.* We rejected that argument because "the accuracy of the regulation as an interpretation of the governing legal standard does not negate the fact that [§ 3.304(b)] did provide the first commentary on section 1111, and was therefore the initial interpretation of that statute," which subsequently changed with the issuance of the 2003 OGC opinion. *Id.*

Here, as in *Jordan*, Appellants' argument that their CUE claims are not premised on a "change in the law" fails to appreciate that 38 C.F.R. § 3.304(b) provided the initial interpretation of § 1111, regardless of any inaccuracies subsequently reflected in *Wagner*. Section 3.304(b) established the VA's controlling interpretation of § 1111's rebuttal standard at the time of Appellants' VA decisions, and it

would make little sense for the Board's and RO's "otherwise correct application" of this then-binding regulation to constitute adjudicative error, let alone CUE. *See* 38 C.F.R. §§ 20.1403(e), 3.105(a)(1)(iv). Indeed, Appellants do not dispute that VA adjudicators, at the time of their original Board and RO decisions, were bound by § 3.304(b). *See also* 38 U.S.C. § 7104(c) ("The Board shall be bound in its decisions by the regulations of the Department . . . ."). And contrary to Appellants' assertion that § 1111's language is plain and unambiguous, *Wagner* found the language of § 1111's rebuttal standard "somewhat difficult to parse" and "self-contradictory" "on its face." *See* 370 F.3d at 1093.

That *Wagner* was the first judicial interpretation of § 1111 by this court does not lead to a contrary result. *Jordan* does not differentiate between new agency interpretations and new judicial interpretations, and instead, refers to *both* the 2003 OGC opinion and *Wagner* as evidence of a change in interpretation of § 1111. *See Jordan*, 401 F.3d at 1298. *Jordan*, moreover, determined that granting CUE claims premised on a changed interpretation of law— whether based on *Wagner* or the 2003 OGC opinion—would fail to "give adequate weight to the finality of judgments," given that "[t]he Supreme Court has repeatedly denied attempts to reopen final decisions in the face of new judicial pronouncements." *Id.* at 1299; *see also DAV*, 234 F.3d at 698 (concluding that new statutory interpretations cannot, through a CUE motion, retroactively affect decisions that are final). We thus cabined the reach of CUE motions to exclude retroactive application of a new judicial or agency pronouncement to a final VA decision on a benefits claim.

Even though *Jordan* precludes CUE claims based on retroactively applying either our interpretation in *Wagner* or the VA's interpretation in the 2003 OGC opinion, Appellants nonetheless urge us to follow the contrary reasoning of the *Patrick* cases and hold that *Wagner* can serve as the basis for their CUE claims. Specifically, *Patrick II*, in a nonprecedential decision, distinguished *Jordan* as

purportedly addressing only "whether a change in the regulatory interpretation of a statute had retroactive effect on CUE claims, not whether our interpretation of the statute in *Wagner* had retroactive effect on CUE claims." *See Patrick II*, 242 F. App'x at 698. Because Mrs. Patrick's CUE claim was premised on our interpretation of § 1111 in *Wagner*, and not on the VA's changed regulatory interpretation of § 1111, *Patrick II* determined that *Jordan*'s "limited holding" did not apply to bar Mrs. Patrick's claim. *Id.* Subsequently, *Patrick III* summarized *Patrick II*'s reasoning in dicta and reversed the denial of Mrs. Patrick's application for EAJA fees, explaining that the lower court had failed to consider "the fact that the government had adopted an interpretation of [§ 1111] that was wholly unsupported by either the plain language of the statute or its legislative history" in assessing whether the government's position was substantially justified. *See Patrick III*, 668 F.3d at 1334.

We conclude, as the Veterans Court did, that we are not bound by the *Patrick* cases to reach a holding contrary to *DAV* and *Jordan*. *Patrick II* is a nonprecedential decision that issued after *DAV* and *Jordan*. Indeed, we expressly denied a motion to reissue *Patrick II*'s nonprecedential decision as precedential. *See Patrick v. Shinseki*, No. 06-7254 (Fed. Cir. Aug. 21, 2007), ECF No. 26. And *Patrick III*, though precedential, does not directly address whether *Wagner* can serve as a basis for CUE. While *Patrick III* summarizes *Patrick II*'s reasoning in the background section and in a footnote, its description of *Patrick II* in dicta does not elevate it to binding precedent. *See* Fed. Cir. R. 32.1(d) ("The court . . . will not give one of its own nonprecedential dispositions the effect of binding precedent.").

B

Appellants next argue that the Veterans Court misconstrued principles of finality and retroactivity in Supreme

Court decisions, such as *Harper* and *Beam*. When properly read, Appellants contend, these cases "support the retroactive application of judicial pronouncements in cases that are open to collateral attack," Martin Appellant's Br. 19, or, if not, are otherwise "irrelevant" to their CUE claims given *Rivers*'s pronouncement that a judicial construction of a statute is an authoritative statement of what that statute has always meant, George Appellant's Br. 22. We disagree.

Nothing in these cases supports Appellants' contention that a new judicial pronouncement retroactively applies to *final* decisions, even those subject to a collateral attack, such as a request to revise a final Board or RO decision for CUE. *See Routen v. West*, 142 F.3d 1434, 1437 (Fed. Cir. 1998) (explaining that "basic principles of finality and res judicata apply to . . . agency decisions" that have not been appealed and have become final). Instead, *Harper* adopted a rule consistent with *Beam* that new judicial pronouncements are to be given "full retroactive effect in all cases *still open on direct review*" but not in final cases already closed. *See Harper*, 509 U.S. at 96 (emphasis added); *see also, e.g.*, *Beam*, 501 U.S. at 529 ("Retroactivity in civil cases must be limited by the need for finality; once suit is barred by *res judicata* . . . , a new rule cannot reopen the door already closed." (citation omitted)); *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed."); *DAV*, 234 F.3d at 698 ("[t]he new interpretation of a statute can only retroactively [a]ffect decisions still open on direct review, not those decisions that are final," and is therefore not a basis for CUE); *Jordan*, 401 F.3d at 1299 (recognizing that "new judicial interpretations" of a statute generally apply only to "pending cases").

While *Rivers* states that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction," 511 U.S. at 312–13, it never

holds that judicial constructions of statutes should be retroactively applied to *final* decisions, such as the VA decisions at issue here. Instead, *Rivers* cites to *Harper*, which expressly limits retroactivity of judicial decisions to pending "cases still open to direct review." *See id.* at 312 (citing *Harper*, 509 U.S. at 97). And *DAV* likewise cites *Harper* for support in upholding the validity of 38 C.F.R. § 20.1403(e), which states that CUE does not arise from "the correct application of the statute or regulation as it was interpreted at the time of the decision." *DAV*, 234 F.3d at 697.

C

Our determination that *Wagner* cannot serve as the basis for Appellants' CUE claims accords with the legislative intent behind the CUE statutes, 38 U.S.C. §§ 7111 and 5109A. Neither statute addresses subsequent changes in law, interpretations of law, or otherwise defines CUE. Instead, these statutes merely provide that a prior decision shall be revised for CUE "[i]f evidence establishes the error." *See id.* §§ 7111(a), 5109A(a). Upon revision, the statutes then authorize retroactive benefits from the effective date of the original decision. *See id.* §§ 7111(b), 5109A(b).

The statutory history, however, is more instructive. Prior to their statutory enactment, CUE had been solely an administrative practice governed by VA regulation for several decades, dating back to 1928. *DAV*, 234 F.3d at 686. Congress enacted §§ 7111 and 5109A in 1997 to "codify [the] existing regulation[]" governing CUE in RO decisions and extend those principles to Board decisions as well. *See* H.R. Rep. No. 105–52, at 1 (1997). These statutes "made no change in the substantive standards" governing CUE and "merely codified the prior regulation" provided in 38 C.F.R. § 3.105, *see Donovan v. West*, 158 F.3d 1377, 1382 (Fed. Cir. 1998), and the Veterans Court's "long standing interpretation of CUE," *see Bustos v. West*, 179 F.3d 1378, 1381 (Fed. Cir. 1999). We therefore look to the pre-codified

version of § 3.105 and established CUE standards to understand Congress' intent in enacting the CUE statutes.

As an initial matter, we observe that the VA's CUE regulation predates the enactment of the Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat 4105 (1988), which, for the first time, permitted judicial review of VA decisions. Because § 3.105 predates judicial review, this regulation and the VA's administrative practice, before 1988, could not have contemplated CUE would arise from a new judicial interpretation of a statute.

More importantly, as of the CUE doctrine's statutory codification in 1997, § 3.105's preamble provided that revision of a final RO decision based on CUE was available "*except* where" the alleged error was based on "a change in law or Department of Veterans Affairs issue, or a *change in interpretation of law* or a Department of Veterans Affairs issue (§ 3.114)."[6] 38 C.F.R. § 3.105 (1997) (emphases added); *see also Russell*, 3 Vet. App. at 313 ("[C]hanges in the law subsequent to the original adjudication . . . do not provide

---

[6]    We do not construe § 3.105's reference to § 3.114 to be limiting. We nonetheless observe that the substance of § 3.114 comports with our above understanding of CUE. As of 1997, § 3.114 pertained, in relevant part, to the effective date of awards pursuant to liberalizing laws. It explained that where an award is made pursuant to a "liberalizing law" or "liberalizing VA issue," the effective date of that award "shall not be earlier than the effective date of the act or administrative issue" itself. *See* 38 C.F.R. § 3.114(a) (1997). Thus, even where a subsequent law liberalizes benefits that were unavailable under a prior understanding of the law, the effective date of those benefits cannot be earlier than the effective date of the liberalizing law itself. Likewise, here, our understanding of CUE precludes *Wagner*'s interpretation of § 1111 from providing retroactive benefits predating *Wagner* itself.

a basis for revising a finally decided case."). Given that § 3.105 plainly excluded a "change in law" or "change in interpretation of law" from CUE, we conclude that by codifying this regulation, Congress did not intend for CUE to go so far as to attack a final VA decision's correct application of a then-existing regulation that is subsequently changed or invalidated, whether by the agency or the judiciary.[7] In other words, the VA does not commit clear and unmistakable error in a benefits claim decision when it faithfully applies a regulation as it existed at the time of decision, even if that regulation is later revised or invalidated.

Accordingly, we reject Appellants' theory as to the scope of CUE and hold that our interpretation of § 1111 in *Wagner* cannot be the basis for Appellants' CUE claim.

### CONCLUSION

We have considered Appellants' remaining arguments but find them unpersuasive. For the reasons set forth above, we affirm the Veterans Court's decisions.

### AFFIRMED

### COSTS

No costs.

---

[7]    We note that the VA reached this conclusion in its 1994 OGC opinion, VA Gen. Counsel Prec. 9-94 (Mar. 25, 1994), which addressed whether Veterans Court decisions invalidating VA regulations or statutory interpretations have retroactive effect through CUE. As with our decision today, the VA also interpreted § 3.105's preamble to exclude changes in interpretation of law by judicial precedent as a basis for CUE. *See id.* at 2 ("[I]t is our view that section 3.105(a) provides no authority . . . for retroactive payment of benefits when the [Veterans Court] invalidates a VA interpretation or regulation.").