Citation Nr: AXXXXXXXX
Decision Date: 08/31/21 Archive Date: 08/31/21

DOCKET NO. 191003-35961
DATE: August 31, 2021

ORDER

The motion revise a June 1992 rating decision denying service connection for a back disability on the basis of clear and unmistakable error (CUE) is denied.

FINDING OF FACT

The June 1992 rating decision denying service connection for a back disability does not contain an outcome-determinative error in applying the law extant at that time to the facts that were before the adjudicator.

CONCLUSION OF LAW

The criteria for entitlement to revision of the June 1992 rating decision denying service connection for a back disability on the basis of CUE have not been met. 38 U.S.C. § 5109A; 38 C.F.R. §§ 3.104, 3.105(a).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from February 1989 to September 1991. 

In an April 2018 rating decision, the agency of original jurisdiction (AOJ) denied revision of a June 1992 rating decision denying service connection for a back condition on the basis of CUE under the legacy review system. The Veteran timely appealed that decision. In January 2019, the Veteran submitted a Rapid Appeals Modernization Program (RAMP) Opt-In Election form, opting the appeal into the modernized appeal system under the Appeals Modernization Act (AMA). Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, 131 Stat. 1105 (2017). At that time, the Veteran elected the Higher-Level Review lane. In March 2019, the AOJ issued a Higher-Level Review rating decision. The Veteran timely appealed that rating decision by submitting an October 2019 VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement), and elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the RAMP opt-in. 38 C.F.R. § 20.301.

In June 2020, the Board denied entitlement to revision of the June 1992 rating decision denying service connection for a back disability on the basis of CUE. The Veteran appealed the June 2020 Board decision to the United States Court of Appeals for Veterans Claims (Court). In a March 2021 Order, the Court granted a Joint Motion for Remand (JMR) and vacated and remanded the appeal for readjudication consistent with the JMR. 

Clear and Unmistakable Error

A previous determination that is final and binding will be accepted as correct in the absence of CUE. Where evidence stablishes such an error, the prior decision will be reversed or amended. 38 C.F.R. § 3.105(a).

A determination of CUE is a three-pronged test. First, either the correct facts, as they were known at the time, were not before the adjudicator (i.e., there must be more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions at the time were incorrectly applied. Second, the error must be undebatable and of the sort which, had it not been made, would have manifestly changed the outcome at the time it was made. Third, a determination that there was CUE must be made on the record and law that existed at the time of the prior adjudication in question. Russell v. Principi, 3 Vet. App. 310 (1992).

CUE is a very specific and rare kind of error. It is the kind of error, of fact or law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Fugo v. Derwinski, 6 Vet. App. 40, 43 (1993).

Determination of a CUE motion must apply only the evidence that was of record at the time of the challenged decision and the laws in existence at the time of the challenged decision. See 38 C.F.R. §§ 20.1403(b), 20.1405(b); Fournier v. Shinseki, 23 Vet. App. 480 (2010).

The Veteran contends that the AOJ incorrectly applied the statutory and regulatory provisions extant at the time of the June 1992 rating decision and but for that error the outcome would have been manifestly different. See October 2019 Correspondence from Representative; June 2021 Correspondence from Representative. 

At the time of the June 1992 rating decision, the evidence of record demonstrated the following facts. VA received the Veteran's original application for a back disability in January 1992. In a March 1992 Statement in Support of Claim, the Veteran stated that she injured her back in service in February 1991, while pulling a mail car. The Veteran described that as she was pulling the mail cart it gained speed and began pushing her instead. The mail car pushed her into the bumper of a tractor trailer. She had the wind knocked out of her and heard a crack in her back. The Veteran recalled that an ambulance was called and that she was taken to a clinic where she was treated. 

The Veteran's service treatment records (STRs) did not contain notation of any diagnoses of back condition, complaints of back condition, or a history of back conditions at the time of her enlistment examination. A July 1990 Radiologic Consultation Request/Report noting that a reversal of the normal lordosis was observed and that it was possibility indicative of a paracervical spine, but it did not contain any references to the Veteran's lumbar spine. A December 1990 Emergency Care and Treatment Medical Record documented the Veteran's complaint of low back pain and a diagnosis of lumbar strain. A January 1991 Chronological Record of Medical Care noted the Veteran had been experiencing lower and middle back pain and a diagnosis of lower back strain. A January 1991 Physical Therapy Consultation noted a diagnosis of mechanical low back pain. Thereafter, the Veteran's STRs confirmed that she sustained an injury to her lower back as well as her left hip on February 6, 1991. As a result, she was taken by ambulance for treatment. The treatment provider at that time diagnosed with Veteran with a contusion to the lumbar spine and the left hip. February 6, 1991 STR - Chronological Record of Medical Care. The treatment provider indicated that an x-ray examination was normal. A couple of days later, the Veteran was diagnosed with a lumbar strain as well as a contusion. February 8, 1991 STR - Emergency Care & Treatment Note. At that time of the Veteran separation from service, it was determined that following a review of the Veteran's medical records a physical examination for separation or retirement was not required. The Veteran's STRs contain no separation examination. 

A letter dated February 14, 1991, letter from Dr. L.K.P., a private chiropractor, relayed that the Veteran had been under Dr. L.K.P.'s care for a low back syndrome since September 1991 and has been seen four times. Although Dr. L.K.P. does not explicitly opine that the Veteran's low back syndrome is due to her in service injury, Dr. L.K.P.'s letter noted the Veteran's in-service injury. 

A February 11, 1992 Chiropractic Care Certificate noted the Veteran received care from S.C.O., a private chiropractic practice, on two consecutive dates in July 1991. It indicated the treatment was for injuries related to the spine and noted diagnoses of c-brachial syndrome, c-cranial syndrome, lumbar sciatic, and disc displacement. 

The Board notes that while the letter from Dr. L.K.P. is dated as February 1991 and a hand written note in the bottom left corner of the letter indicates it was submitted by the Veteran in March 1991, three of the four treatment dates noted by Dr. L.K.P. post-date the letter. The Board acknowledges that in an October 2019 correspondence the Veteran's representative stated that Dr. L.K.P.'s letter meant to indicate that treatment began in September 1990. However, in a June 2021 correspondence, the Veteran's representative appears to suggest that Dr. L.K.P. misdated the letter itself by stating the letter was written on February 14, 1992. 

The Veteran was afforded a VA examination in February 1992. At that time, the Veteran reported that she was caught between a moving airport wagon and an tractor trailer when the again pushed her into the trailer. As a result, she experienced pain and was bounced off her left hip. The Veteran stated she heard a cracking noise and fell to the ground. Since that time, the Veteran has experienced recurring pain down her right left, hip, and lower lumbar area. As a part of the examination, the Veteran underwent an x-ray examination, which revealed mild dextroscoliosis without any other abnormalities of the lumbar spine. Following examination, the VA examiner diagnosed with the Veteran with mild scoliosis. 

A June 1992 rating decision denied service connection for a back condition. The Board notes the rating decision was endorsed by three rating specialists, one of whom was a medical rating specialist with a Doctor of Medicine (MD) degree. The rating decision stated the evidence reviewed consisted of the Veteran's STRs, February 1992 VA examination report, a February 14, 1991 statement from Dr. L.K.P., and a February 11, 1992, statement from Dr. S. (the February 11, 1992, Chiropractic Care Certificate from S.C.O.). The rating decision reiterated the findings of the February 1992 VA examination. The rating decision stated that "[a]lthough the [Veteran] received an injury in [February 1991] in [her] back, it is noted that [her] condition resolved with no evidence of any actual orthopedic condition noted on [her] latest exam. The x-ray findings noted on exam of scoliosis is considered one of a constitutional abnormality of a lifelong duration and not aggravated by service." 

After a review of the record, the Board finds that the criteria to reverse or revise the June 1992 rating decision denying service connection for a back condition on the basis of CUE have not been met. See 38 C.F.R. § 3.105(a).

At the time of the June 1992 rating decision, service connection was warranted for a disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty. 38 U.S.C. § 1110 (1994) (Pub. L. 85-857, Sept. 2, 1958, 72 Stat. 1119, § 310; Pub. L. 101-508, title VIII, § 8052(a)(2), Nov. 5, 1990, 104 Stat. 1388-351; renumbered § 1110, Pub. L. 102-83, § 5(a), (c)(1), Aug. 6, 1991, 105 Stat. 406).

However, 38 C.F.R. § 4.9 (1991), (1992), provided that "mere congenital or developmental defects, absent, displaced or supernumerary parts, ... are not diseases or injuries in the meaning of applicable legislation for disability compensation purposes." A July 1990 opinion from VA Office of General Counsel (OGC), distinguished between congenital defects and diseases while addressing under what circumstances, if any, service connection may be granted for conditions or a congenital or developmental origin. VAOPGCPREC 82-90. The OCG found that that while service connection may not be granted for congenital or developmental defects as they are not diseases or injuries under the law, service connection may be granted for congenital or developmental diseases if the evidence establishes that the condition in question was incurred or aggravated during service. 

In the instant appeal, although the VA rating specialists did not expressly indicate that the Veteran's scoliosis was congenital in nature, the Board notes that Dorland's Illustrated Medical Dictionary defines "congenital" as existing at, and usually before, birth and "constitution" as the make-up or functional habit of the body, determined by the genetic, biochemical, and physiologic endowment of the individual. Dorland's Illustrated Medical Dictionary 403, 408 (32nd ed.) (2012). As such, it appears that by categorizing the condition as a constitutional abnormality of a lifelong duration the VA rating specialists determined that the Veteran's scoliosis was congenital in nature. 

The Veteran's representative claims that if there was sufficient evidence to support a determination that the Veteran's scoliosis was congenital, then evidence was required to support a finding as to whether it constituted a defect or disease. October 2019 Correspondence from Representative. In this regard, the Board notes that upon finding that the Veteran's scoliosis was a constitutional abnormality of a life long duration the VA rating specialists proceeded to address whether it had been aggravated by service. Thus, it suggests the VA rating specialists viewed the Veteran's scoliosis as a congenital disease. 

According to the Veteran's representative, if the Veteran's scoliosis was considered a congenital disease, then the VA rating specialists erred by incorrectly applying the statutory or regulatory provisions in effect at that time. Specifically, the Veteran's representative asserts the VA rating specialists failed to apply the presumption of soundness. 38 U.S.C. § 1111 (1994) (Pub. L. 85-857, Sept. 2, 1958, 72 Stat. 1119, § 311; renumbered § 1111 and amended Pub. L. 102-83, § 5(a), (c)(1), Aug. 6, 1991), 105 Stat. 406); 38 C.F.R. § 3.304(b) (1991), (1992).

With respect to the presumption of soundness, at the time of the June 1992 rating decision, a veteran was considered to have been in sound condition when examined, accepted, and enrolled for service except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrated that an injury or disease existed prior thereto. 38 U.S.C. § 1111 (1994); 38 C.F.R. § 3.304(b) (1991), (1992). A determination that a disability preexisted service was not to be made on medical judgment alone as distinguished from accepted medical principles, or on history alone without consideration of the clinical factors pertinent to the basic character, origin, and development of such injury or disease. 38 C.F.R. § 3.304(b) (1991), (1992).

In contrast under the current law, if the presumption of soundness attaches, the burden falls on the government to rebut the presumption by clear and unmistakable evidence that a disability was both preexisting and not aggravated by service. Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004). Notably, at the time of the June 1992 rating decision, the presumption of soundness only required clear and unmistakable evidence of that the disability existed prior to service. 38 C.F.R. § 3.304(b) (1991), (1992); VAOPGCPREC 3-2003 (July 16, 2003); 70 Fed. Reg. 23,027-01, 23,028 (May 4, 2005) (amending § 3.304(b) to require evidence of both preexistence and no aggravation); see also George v. McDonough, 991 F.3d 1227 (Fed. Cir. 2021) (holding that the failure to require clear and unmistakable evidence of both a preexisting condition and a lack of in-service aggravation cannot be the basis of a CUE in a VA decision that pre-dates Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004); DAV v. Gober, 234 F.3d 682, 698 (2000) (holding that new statutory interpretations cannot, through a CUE motion, retroactively affect decision that are final). 

The Board concedes that the June 1992 rating decision did not discuss the relevant statute or regulation regarding the presumption of soundness nor explained how there was clear and unmistakable evidence of a preexisting condition. 

In light of the above, the Board must consider next whether it was not possible that reasonable minds could differ as to whether the evidence of record at the time of the June 1992 rating decision could constitute clear and unmistakable evidence that the Veteran's scoliosis pre-existed service. 

In that regard, the Veteran's representative asserts that in classifying the Veteran's scoliosis as a constitutional abnormality the VA rating specialists did not cite any medical records supporting such a classification. October 2019 Correspondence from Representative; June 2021 Correspondence from Representative (stating this determination did not meet the legal requirements). Thus, it appears the Veteran's representative is claiming that the VA examiner was required to make a determination that the disability preexisted service based on more than medical judgement and history alone. 38 C.F.R. § 3.304(b)(1) (1991), (1992).

At the time of the June 1992 rating decision, despite the Veteran's various back disability diagnoses in service and possible diagnosis of a low back syndrome post-service leading up to the adjudication of the claim in June 1992, at the time of the February 1992 examination, the VA examiner found no other abnormalities of the back other than scoliosis which was assessed to be mild. 

The Veteran's STRs established that she complained of back issues in December 1990 and January 1991, prior to the February 1991 accident to which the Veteran attributed her back condition. Additionally, the VA rating specialists could have interpreted the dates of treatment noted in Dr. L.K.P.'s letter as the Veteran's representative did in their October 2019 correspondence and found that Dr. L.K.P.'s treatment occurred prior to the Veteran's February 1991 in-service injury. Thus, the VA rating specialists may have found that despite the notation in the February 1991 STR that an x-ray examination was normal, the Veteran demonstrated lumbar symptomatology consistent with scoliosis as she reported lumbar symptoms before the February 1991 accident. Further, radiologic examinations, such as x-ray examinations are interpreted by those with medical knowledge and training. As such, the VA rating specialists were entitled to accord less weight to the February 1992 negative x-ray examination finding. Alternatively, given the assessment that the Veteran's scoliosis was mild, the VA rating specialists could have reasonably concluded it may not have been evident in the February 1991 x-ray examination. There was nothing in the evidence of record at the time of the June 1992 rating decision to preclude such a finding by the VA rating specialists. 

Dr. L.K.P. letter noted a diagnosis of low back syndrome with pain radiating down the right leg was a manifestation of the Veteran's scoliosis. See Dorland's Illustrated Medical Dictionary 1819 (defining "syndrome" as a set of symptoms that occur together). Notably, there is nothing in Dr. L.K.P.'s letter to suggest that the presence of scoliosis was considered and ruled out altogether. Dr. L.K.P. did not indicate having obtained or reviewed any radiologic examination of the spine. Moreover, while Dr. L.K.P. referenced the Veteran's in-service injury, Dr. L.K.P. did not provide any rationale linking it to the low back syndrome to the contusion and lumbar strain sustained as a result of that injury. 

Post-service, while the February 1992 Chiropractic Care Certificate listed the Veteran's diagnoses as c-brachial syndrome, c-cranial syndrome, lumbar sciatica, as well as disc placement. These diagnoses were rendered by the private treatment provider after treating the Veteran just twice, on consecutive dates. The treatment for these conditions were provided prior to the Veteran's discharge from service. The treatment provider completing the Chiropractic Care Certificate did not indicate having obtained or reviewed any radiologic examination of the spine. Like Dr. L.K.P.'s letter, there is no indication that treatment provider completing the Chiropractic Care Certificate considered whether there was scoliosis present and, if so, that they ruled out scoliosis altogether. 

The Veteran underwent an x-ray examination as a part of the February 1992 VA examination, which revealed mild dextroscoliosis without any other abnormalities of the lumbar spine. As the Veteran's representative has recognized, scoliosis may be congenital. October 2019 Correspondence from Representative (citing Ford v. Shinseki, 2011 U.S. App. Vet. Claims LEXIS 610 (2011) fn.4 citing Dorland's Illustrated Medical Dictionary 1706-07 (31st ed. 2007)). The VA rating specialists, one of whom had an MD, upon review of the evidence of record concluded the Veteran's scoliosis was in fact congenital in nature by classifying it as a constitutional abnormality. 

The Veteran's representative suggests that the fact the General Rating Formula for Diseases and Injuries of the Spine recognizes that scoliosis may be caused by symptoms of a disability such as spasm. 38 C.F.R. § 4.71a. As such, the Veteran's STRs documented a reversal of the normal lordosis, possibly indicating a paravertebral muscle spasm, that the Veteran's scoliosis was not congenital. However, the Board notes the General Rating Formula for Diseases and Injuries of the Spine were not in effect at the time of the June 1992 rating decision. 38 C.F.R. § 4.71a, The Spine, Diagnostic Codes 5285-5295 (1991), (1992). At the time of the rating decision, none of the diagnostic codes associated with the spine recognized that scoliosis may be caused by symptoms of a disability such as spasm. Even if it had, however, the VA rating specialists were not bound to reach the same conclusion based on the July 1990 Radiologic Consultation Request/Report. There was nothing of record at the time of the June 1992 rating decision indicating it would not have been reasonable for the VA rating specialists to conclude there was some manifestation of scoliosis but disagree that it was indicative of a paracervical muscle spasm given that the July 1990 Radiologic Consultation Request/Report indicated it was a possible cause. As such, it comes down to a weighing or evaluating of the evidence in which reasonable minds could differ. 

The Veteran's representative contends that the June 1992 rating decision contains a misstatement of fact. Specifically, it states that although the Veteran sustained an injury in February 1991 to her back, the condition resolved with no evidence of any actual orthopedic condition noted on her latest exam. October 2019 Correspondence from Representative. The Board agrees that, assuming the "latest exam" is the February 1992 VA examination, this is a misstatement there was evidence of an orthopedic condition as evidence by the February 1992 examiner's diagnosis of scoliosis as well as finding of limitation of motion of the lumbar spine. See Dorland's Illustrated Medical Dictionary 1338 (defining "orthopedic" as pertaining to the correction of deformities of the musculoskeletal system). However, this misstatement was not the result of the correct facts, as they were known at the time, were being before the VA rating specialists as the VA rating specialists were clearly aware of the diagnosis of scoliosis and recited the range of motion testing results in the June 1992 rating decision narrative. 

Considering the above, it cannot be said that the VA rating specialists made the determination that the Veteran's scoliosis preexisted service without the requisite medical knowledge and training to draw such a conclusion, was not relying on accepted medical principles, or that there was no evidence upon which the VA rating specialists could have considered the clinical factors pertinent to the basic character, origin, and development of such injury or disease. 38 C.F.R. § 3.304(b)(1) (1991), (1992). As such, the Board finds that reasonable minds could differ as to whether the evidence of record at the time of the June 1992 rating decision constituted clear and unmistakable evidence that the Veteran's scoliosis preexisted service. In other words, it comes down to a weighing or evaluating of the evidence in which reasonable minds could differ.

Accordingly, the Board cannot find that the application of the presumption of soundness (i.e. a determination as to whether there was clear and unmistakable that the Veteran's scoliosis preexisted her service), would have manifestly changed the outcome of the June 1992 rating decision. See George v. Wilkie, 30 Vet. App. 364, 378 (2019) (holding that without evidence of a manifestly different outcome, the claimant failed to demonstrate CUE of a Board decision that did not discuss the presumption of soundness), aff'd by George v. McDonough, 991 F.3d 1227.

Turning to the VA rating specialists' finding that the Veteran's scoliosis was not aggravated by her service, as discussed above, the higher evidentiary burden of proving that there was clear and unmistakable evidence that there was no aggravation by service was not applicable in June 1992. Thus, given the evidence of record detailed above, it was reasonable for the VA rating specialists to conclude the Veteran's scoliosis was not aggravated by her service upon. While the Veteran may have had scoliosis, the Veteran also sustained other injuries to her back as evidence by her STRs. Consequently, the VA rating specialists could have reasonably concluded that the Veteran's symptoms in service were not attributable her scoliosis or, in the alternative, were temporary flare-ups or was the natural progression thereof rather than an increase in the underlying disability due to service. There was nothing in the evidence of record at the time of the June 1992 rating decision to preclude such a finding by the VA rating specialists. Therefore, the evidence of record at the time of the June 1992 rating decision does not show that the statutory or regulatory provisions at the time were incorrectly applied in determining whether the Veteran's scoliosis had been aggravated by her service.

Finally, assuming arguendo that it was undebatable that the VA rating specialists erred by finding the Veteran's scoliosis was congenital in nature, the Board finds that it would not have manifestly changed the outcome of the June 1992 rating decision as there was no nexus opinion linking a post-separation back disability to the Veteran's service. 

In that regard, the only diagnosis at the time of the adjudication was scoliosis. The February 1992 VA examiner found no evidence of any other abnormalities. Therefore, the VA rating specialists determined any back conditions due to her injury in service resolved and did not need to be considered. Contra. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007) (holding that the current disability element is satisfied when the claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim even though it resolves prior to adjudication), Romanowsky v. Shinseki, 26 Vet. App. 289, (2013) (holding that when the record contains a recent diagnosis of a disability prior to the filing of a claim for VA disability compensation based on that disability, the Board must address that evidence in determining whether a current disability exists); but see DAV, 234 F.3d at 698 (holding that new statutory interpretations cannot, through a CUE motion, retroactively affect decision that are final). 

While Dr. L.K.P. referenced the February 1991 injury in their letter, Dr. L.K.P. did not provide any rationale linking their own diagnosis to the low back syndrome to the contusion and lumbar strain sustained as a result of that injury. Further, the VA rating specialists may have interpreted the Dr. L.K.P.'s letter to indicate the Veteran received treatment prior to and shortly after the February 1991 injury. Thus, Dr. L.K.P. was only confirming in-service complaints and diagnoses of a back problem. Likewise, although the February 1992 Chiropractic Care Certificate post-dates the Veteran's service, the diagnoses contained therein were based on treatment rendered while she was on active duty service, in July 1991. The only evidence of record establishing a post-service diagnosis was the February 1992 VA examination which contained the diagnosis of scoliosis. There was no positive nexus opinion of record finding that the Veteran's scoliosis was due to her service. 

Based on the above, even if the error were conceded, it cannot be said that adjudication of the claim under the applicable legal standard would have manifestly changed the outcome at the time it was made.

Accordingly, the Board finds that revision of the June 1992 rating decision denying service connection for back disability based on CUE is not warranted.

 

 

G.J. Suh

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board L. J. Wells-Green

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.